711 So.2d 35 (1998)
HARDWICK PROPERTIES, INC., as Managing General Partner of Piper Dunes Company, a Florida general partnership, Appellant,
v.
Kenneth P. NEWBERN and Interstate Motel Developers, Inc., a foreign corporation, Appellees.
No. 96-4524.
District Court of Appeal of Florida, First District.
February 26, 1998.
Rehearing Denied June 12, 1998.
*36 Adam G. Adams, III of Thompson & Adams, Jacksonville, for Appellant.
C. Warren Tripp, Jr. and Robert H. Farnell, II of Bedell, Dittmar, DeVault, Pillans & Coxe, Jacksonville, for Appellees.
VAN NORTWICK, Judge.
Hardwick Properties, Inc., as managing general partner of Piper Dunes Company, a Florida general partnership, the contractor and seller of developed real property known as Piper Dunes Condominiums, appeals a non-final order granting summary judgment in favor of appellees, Kenneth P. Newbern and Interstate Motel Developers, Inc., and holding appellant liable for damages and revocation of two condominium purchase agreements pursuant to the Interstate Land Sales Act, 15 U.S.C. § 1701, et seq. (ILSA or the Act). We conclude that the trial court erred in ruling that as a matter of law the instant contract restrictions on the recovery of special and consequential damages rendered illusory the appellant's contractual obligation to construct the subject buildings within two years of the date of execution of the instant purchase agreements and that, as a result, the appellant was not exempt from compliance with ILSA under the so-called two-year build exemption provided by the Act. See 15 U.S.C. § 1702(a)(2). Accordingly, we reverse and remand for further proceedings.

Factual and Procedural Background
The appellees sought to purchase from appellant two Piper Dunes condominium units. The parties entered into separate, but nearly identical, purchase agreement for the purchase of each unit. Subsequent to appellee paying a deposit on each unit, a dispute arose between the parties regarding certain alleged defects. Neither transaction closed. Appellant brought suit against appellees seeking damages for breach of contract and seeking a declaratory judgment regarding its right to retain the deposits. Appellees, the purchasers, argued below that the purchase agreements were voidable by virtue of appellant's failure to comply with the provisions of the ILSA, 15 U.S.C. section 1701 et seq. Appellant has argued below and argues here *37 that because it was unconditionally obligated to complete construction of the units within two years of the date of the purchase agreements at issue, the purchase agreements are not subject to the requirements of ILSA. Both parties agree that if the respective agreements are not exempt from the requirements of ILSA, then the agreements are unenforceable.
The trial court determined that
[Appellant's] contractual promise to complete construction of the condominium units at issue within two years was conditional and illusory. As a result, the two-year build exemption of [ILSA] is inapplicable to [appellant]. As the "2-year build exemption" ... is not applicable to this action, the disclosure requirements of [ILSA] are applicable to the transactions at issue ... and should have been made by appellant.
* * * * * *
Due to [appellant's] violation of [ILSA], [appellant] is liable to [appellee] for damages, interest, court costs, attorney fees, and other statutory amounts ... and [appellees] are entitled to, should they so elect, revocation of their respective contracts with [appellant].
(Citations omitted).

ILSA Two-Year Construction Requirement
ILSA requires real estate developers to make certain disclosures and fulfill other obligations in connection with the sale of undeveloped or sub-divided land. Under the Act, it is unlawful (except with respect to certain exempt transactions) for any developer to sell through the use of interstate commerce any land offered as a part of a common promotional scheme unless the land is registered with the Secretary of the U.S. Department of Housing and Urban Development (HUD) and the purchaser is provided with written disclosures in advance of signing a purchase agreement. See Guidelines for Exemption Available Under the Interstate Land Sales Full Disclosure Act, 24 CFR Ch. X, § 1700.1, p. 6 (4/1/90); Appalachian, Inc. v. Olson, 468 So.2d 266, 267-268 (Fla. 2d DCA 1985). The Act does not apply, however, among other things,
to ... the sale or lease of any improved land upon which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such building within a period of two years.
15 U.S.C. § 1702(a)(2). Appellant concedes that it did not make the ILSA disclosures or a HUD registration the transactions before us. Appellant asserts, however, that the development was exempt from the requirements of the Act under the two-year building requirement because the instant purchase agreements provided for a contractual obligation to construct the condominium buildings within two years.
The instant purchase agreements purport to establish an "unconditional obligation" on the part of appellant to complete construction of the condominium units within two years by providing in paragraph 7(a), in pertinent part, as follows:
In compliance with § 1710-5(b) of the Interstate Land Sales Full Disclosure Act (15 U.S.C. 1701 et seq.), Developer acknowledges its unconditional obligation to complete and to deliver the Unit to Purchaser within not more than twenty-four (24) months from the date of execution of this Agreement; subject, however, to delays caused by events which would support a defense based upon impossibility of performance for reasons beyond Developer's control, including but not limited to, Acts of God, acts of governmental authority (ies) and courts of law, flood, hurricane, strikes, unavailability of materials, and labor conditions beyond Developer's control. If, because of such delays, the Developer is unable to substantially complete construction of the Unit within twenty-four (24) months from the date of execution of this Agreement, then such time period shall be extended for a term equal to the total period(s) attributable to the delays.
The purchase agreements also restrict the remedies available to the purchaser (appellees here) in the event of breach by the developer (appellant here). The "Default" *38 provision, paragraph 11(b) of the agreements, provides in pertinent part:
If Developer shall breach any of its obligations under this Agreement, Purchaser may elect to terminate this Agreement by giving notice in the manner set forth [herein]... Upon such breach and receipt of such notice, Developer shall promptly instruct Escrow Agent to refund to Purchaser any money paid to Developer hereunder in accordance with the Escrow Agreement and Section 718.202, Florida Statutes, and this Agreement shall be of no further force and effect, and all of the parties hereto shall be discharged from all obligations and liabilities hereunder. Alternatively, in the event of Developer's default, Purchaser may pursue such other remedies as may be available to Purchaser at law or in equity, including without limitation, the remedy of specific performance. In no event, however, shall Purchaser be entitled to recover consequential or special damages arising out of Developer's default under this Agreement. (emphasis added).
The question presented by the instant case is whether the above contractual limitations on special and consequential damages render the 24-month construction obligation illusory as a matter of law and, therefore, removes the transaction from the two-year build exemption under ILSA.

Two-Year Construction Obligation Under Florida Law
Among other things, appellant argues that in interpreting ILSA great weight should be given the interpretation of the Act by HUD, the federal agency charged with administering the Act. In Samara Dev. Corp. v. Marlow, 556 So.2d 1097 (Fla.1990), however, the court specifically rejected the developer's argument that, in interpreting the exemption under 15 U.S.C. section 1702(a)(2), courts should rely upon HUD guidelines and interpretations published. Rather than rely upon interpretations of the Act by HUD, the Samara court "look[ed] to Florida law to determine what is required of the contract in order to ensure that the `obligation' to complete construction is not illusory." Id. at 1100. Accordingly, we limit our analysis here to Florida law.
Under contract law generally, while parties unquestionably enjoy the freedom to limit their respective remedies under a contract, a contract must nevertheless be reasonable and must provide to a mutuality of obligation in order to be considered enforceable. See Jay Vee Realty Corp. v. Jaymar Acres, Inc., 436 So.2d 1053 (Fla. 4th DCA 1983); Indian River Colony Club, Inc. v. Schopke Constr. & Eng'g, Inc., 592 So.2d 1185 (Fla. 5th DCA 1992). Thus, as the district court observed in Pizza U.S.A. of Pompano Inc. v. R/S Assocs. of Florida, 665 So.2d 237, 240 (Fla. 4th DCA 1995), a contract in which a developer enjoys a "`heads-I-win, tails-you-lose'" bargain renders a contract unreasonable and illusory and, hence, unenforceable.
Several Florida cases have considered whether limitations on the purchaser's remedies render the two-year build obligation illusory. In Dorchester Dev., Inc. v. Burk, 439 So.2d 1032 (Fla. 3d DCA 1983), the Third District found that the sales contract before it did not satisfy the two year completion exemption because the contract limited the purchaser solely to the right to the return of the deposit in the event the unit was not delivered within two years. The court explained that under ILSA "[w]here the seller is obligated to complete by a time certain, the purchaser is not limited ... to the remedy of rescission, but he may affirm the contract and seek damages." Id. at 1034. See also Berzon v. Oriole Homes Corp., 497 So.2d 670 (Fla. 4th DCA 1986)(a developer may not claim an exemption under ILSA when damages for violation of the two year construction provision are limited to the return of the deposit or specific performance).
In comparison, in Marco Bay Assocs. v. Vandewalle, 472 So.2d 472 (Fla. 2d DCA 1985), the Second District found that the developer had satisfied the two-year build exemption when the contract at issue obligated completion within two years of the contract date and allowed the buyer, upon default by the developer, "to affirm the contract and seek damages or specific performance." The court noted that "[w]hile [the contract] specifically provides for the right of rescission *39 by the buyer in the event the seller, for any reason, defaults (including strike, Act of God, etc.), it does not negate or exclude any right of the purchaser to proceed on the contract, unless, of course, rescission is elected." Id. at 474-475. In Marco Bay, the right to seek damages was not restricted, unlike the instant case.
The Florida Supreme Court considered the ILSA two-year construction exemption in Samara Dev. Corp. v. Marlow, 556 So.2d 1097 (Fla.1990). In Samara, the purchaser entered into a condominium purchase agreement with Samara and Samara agreed to complete the condominium unit less than two years from the date of the agreement. Under the agreement, upon default by Samara the purchaser was entitled to recover his deposit or to bring an action for specific performance. The purchaser sued Samara for breach of contract, seeking damages and rescission pursuant to ILSA. Samara defended by arguing that its development was exempt from the Act, and the trial court granted summary judgment in favor of Samara based upon the exemption. On appeal, the Fourth District, relying on Berzon, reversed and remanded, but certified the following question to the supreme court as one of great public importance:
Is a contact for the sale of a condominium in Florida exempt from the provisions of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. Sec. 1710, where it provides for completion within two years but restricts the buyer's remedies for breach of the contract by the sellers to a return of the deposit or specific performance, or must the contract also afford the buyer the alternative remedy of a suit for damage?
Marlow v. Samara Dev. Corp., 528 So.2d 420, 422 (Fla. 4th DCA 1988).
In answering the certified question in the negative and approving the decision of the Fourth District, the court held that because of the restriction on the purchaser's remedy, "Samara ... is not exempted from the provisions of the Interstate Land Sales Act." Id. at 1101. The Samara court explained:
We believe that without the availability of at least both specific performance and damages the obligation to complete the construction within two years is illusory. Specific performance alone is not sufficient because the developer could sell the property to a third party in the interim, nullifying the availability of specific performance.
Id. at 1097.
Although providing considerable guidance, the decision in Samara does not definitively resolve the question posed in the instant case. In Samara, the developer limited the remedy to a recovery of the deposit or specific performance; no damages whatsoever were recoverable by the purchaser under the purchase agreement. Here, however, the purchaser can seek general damages, but is not entitled to recover consequential or special damages.
We do not read Samara as creating a bright-line rule that the developer's contractual obligation is rendered illusory by any restriction of the purchaser's right to recover all possible damages. The court in Samara makes clear that specific performance alone is not a sufficient remedy and that a purchaser must have the availability of both specific performance and some damages for the developer's obligation to complete construction to be real, rather than illusory. Id. at 1101. In determining whether the developer's obligation is "real" or "illusory," the focus of the Samara court was on whether the contract could, in effect, be breached virtually at will, id. at 1099, or whether the developer would be exposed to sufficient damages for breach that a realistic obligation to construct would exist. This analysis may be particularly complicated where, for example, a favorable real estate market would allow the developer after breach to sell the constructed property at a price materially greater than the preconstruction sales price. We conclude that, if the developer remains exposed to damages for breach which are sufficient to constitute a substantial economic risk under the circumstances, the developer's obligation is real rather than illusory.
General damages are "those damages which naturally and necessarily flow or result from the injuries alleged...." Hutchison v. Tompkins, 259 So.2d 129, 132 (Fla. 1972). Stated another way, general damages *40 may be described as those damages "as may fairly and reasonably be considered as arising in the usual course of events from the breach of contract itself." Florida E. Coast Ry. v. Beaver St. Fisheries, Inc., 537 So.2d 1065, 1068 (Fla. 1st DCA 1989). In contrast, special damages are not likely to occur in the usual course of events, but "may reasonably be supposed to have been in contemplation of the parties at the time they made the contract." Id. Special damages consist of items of loss which are peculiar to the party against whom the breach was committed and would not be expected to occur regularly to others in similar circumstances. See Johnson v. Monsanto Co., 303 N.W.2d 86 (N.D. 1981). Similarly, consequential damages "do not arise within the scope of the immediate buyer-seller transaction, but rather stem from losses incurred by the non-breaching party in its dealings, often with third parties, which were a proximate result of the breach, and which were reasonably foreseeable by the breaching party at the time of contracting." Petroleo Brasileiro, S.A., Petrobras v. Ameropan Oil Corp., 372 F.Supp. 503, 508 (E.D.N.Y.1974). The most common form of consequential damages is lost profits. See Nyquist v. Randall, 819 F.2d 1014, 1017 (11th Cir.1987)("[L]ost profits may indeed be the quintessential example of consequential damages.").
Under the agreements before us, upon breach by the appellant, this developer would be responsible to each purchaser-appellee for those damages which naturally and necessarily flowed from the breach. In the instant case, the record is silent as to the nature and amount of the damages that would be recoverable by appellees as general damages. There has been no showing here that such recoverable damages would be sufficiently low in amount as to render the developer's risk of loss upon breach so insubstantial that the developer could breach the contract virtually at will. To say that appellant's obligation was "illusory," as the trial court found in the instant case, because upon proof of breach appellant will not required to pay those damages which do not typically or immediately flow from the breach, is to place form over substance. Therefore, we conclude that, notwithstanding the contractual prohibition against recovering special and consequential damages, at this stage of the litigation it was error to conclude as a matter of law that the developer in the instant case was under no real obligation to deliver the subject units within two years of the date of the contract. We leave to the trial court to determine on remand what general damages are recoverable by appellee and whether those damages are so insubstantial under the circumstances of the instant case as to render the developer's obligation illusory.
The trial court also found that the purchase agreements provided a conditional construction completion obligation because the agreements prohibited delay damages. We cannot agree. The final two sentences of paragraph 7(a) of the agreements provide that the developer will not be required to compensate the purchaser for construction or delivery delays.[1] We interpret these sentences as solely addressing delays in the "estimated construction schedules." Appellees argue that, because the only date mentioned in paragraph 7(a) is the 24-month construction obligation, the prohibition in the last two sentences of paragraph 7(a) must be another limitation of the developer's obligation to construct the units within 24 months. Were we to read paragraph 7(a) as appellees urge us, paragraph 7(a) would rendered internally inconsistent and the first three sentences thereof would be meaningless. Courts are obligated to construe contracts in such a way as to give reasonable meaning to all provisions of a contract, rather than one which leaves part of the contract useless or *41 inexplicable. Premier Ins. Co. v. Adams, 632 So.2d 1054 (Fla. 5th DCA 1994).
Here, while the term "estimated construction schedules" is not defined, a plain reading would suggest that the term refers to a possible completion and delivery date earlier than the expiration of the 24-month period. Thus, the agreement allows for the possibility that purchasers might be told to expect delivery by a date certain which was less than 24 months from execution of the contract, but that damages could not be sought until the 24-month obligation was breached.
Finally, the trial court also found in the order under review that the respective purchase agreements prohibited rescission. In this finding, the trial court misreads the agreements. Paragraph 11(b) clearly provides that a purchaser may terminate the agreement upon breach, seek the return of the deposit and any other available remedies other than recovery of special and consequential damages.
REVERSED and REMANDED for proceedings consistent with this opinion.
JOANOS and WOLF, JJ., concur.
NOTES
[1] The final two sentences of paragraph 7(a) provide:

Developer shall make every reasonable and diligent effort to meet or exceed estimated construction schedules, but developer shall not be obligated to make, provide or compensate for any accommodations to purchaser as a result of the construction or delivery delays, nor shall developer be liable to purchaser for any damages or other compensations by reasons of such delays. Furthermore, such delays shall not cancel, amend or diminish any of the obligations of purchaser hereunder.