# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D17-2897
_____

KEYSTONE AIRPARK AUTHORITY,

    Appellant,

    v.

PIPELINE CONTRACTORS, INC., a
Florida corporation; THE
HANOVER INSURANCE COMPANY,
a New Hampshire corporation;
and PASSERO ASSOCIATES, LLC,
a Florida limited liability
company,

    Appellees.

_____

On appeal from the Circuit Court for Clay County.
Don H. Lester, Judge.

January 25, 2019

WOLF, J.

On consideration of appellee's motion for clarification and appellant's response, this Court grants the motion, withdraws the opinion filed on November 27, 2018, and substitutes the following opinion in its place.

Keystone Airpark Authority, appellant, challenges a partial final summary judgment entered in favor of Passero Associates,

LLC, appellee. The Airpark argues the trial court erred in determining that the damages it sought to repair an airplane hangar and taxiways that deteriorated after Passero allegedly failed to meet its obligations under a construction contract were consequential damages, which were excluded by the parties' contract. We affirm but certify a question of great public importance.

FACTS

The Airpark brought causes of action against Passero, an engineering firm, for breach of contract and negligence. The Airpark entered into an agreement with a contractor to construct airplane hangars and taxiways, and it contracted separately with Passero to provide engineering services that included "part-time resident engineering and inspection, [and] material testing." Specifically, the contract required Passero to "inspect," "observe" and "monitor" the construction work to ensure compliance with the plans and to ascertain the need for correction or rejection of the work, including determining the suitability of materials used by the contractor:

> Observe the work to determine conformance to the contract documents and to ascertain the need for correction or rejection of the work.
>
> . . . .
>
> Arrange for, conduct, or witness field, laboratory or shop tests of construction materials as required by the plans and specifications.
>
> Determine the suitability of materials on the site, and brought to the site, to be used in construction.
>
> Interpret the contract plans and specifications and monitor the construction activities to maintain compliance with the intent.
>
> Prepare and submit inspection reports of construction activity and problems encountered . . . .

2

. . . .

> [M]onitor[] periodic construction activities on the project and document[] their observations in a formal project record . . . .

The Airpark alleged that the contractor used substandard material for stabilization underneath the structures, which Passero failed to detect, causing the concrete hangar slabs and asphalt taxiways to prematurely deteriorate. The Airpark sought to recover from Passero the cost to remove, repair, and replace the hangars, taxiways, and underlying subgrade. It sought the same relief from the contractor.

Passero moved for summary judgment, arguing the damages the Airpark sought to recover were not a direct result of Passero's alleged failure to perform under the contract. Instead, Passero argued the need for repair resulted from a combination of Passero's alleged failure to perform construction inspection services under the contract and the contractor preparing the subgrade improperly. Thus, Passero argued the repair costs were not direct or general damages, but instead were consequential damages, which were excluded by a provision in the parties' contract that stated, "Passero shall have no liability for indirect, special, incidental, punitive, or consequential damages of any kind." Passero argued the only direct or general damages that the Airpark could seek to recover against Passero were the costs of the services provided by Passero. The trial court agreed and entered partial final summary judgment in favor of Passero.

ANALYSIS

The Airpark argues the cost of repair to the hangars and taxiways constitutes general damages and not consequential damages because those damages were foreseeable. It relies on an English case from 1854 called *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1854), which defined the general measure of damages as those damages "arising naturally . . . from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract." However, if there were "special circumstances" that were "communicated by the plaintiffs to the

3

defendants, and thus known to both parties," the plaintiff could recover for "injury which would ordinarily follow from a breach of contract under these special circumstances." *Id.*

Here, the Airpark argues it was foreseeable that Passero's failure to perform under the contract could have resulted in construction defects going undetected, which could later require repair. It reasons these damages arose naturally from the breach of its contract with Passero and did not involve special circumstances about which it would have been required to give Passero actual notice. Thus, the Airpark argues these damages are general and not special or consequential.

Foreseeability is not at issue here. Passero does not dispute it was foreseeable that if it failed to perform its duties under the contract, that could result in the need for repairs. It is thus necessary for us to explore the definition of general, special, and consequential damages and how the question of foreseeability affects the nature of the damages incurred in this case.

"General damages are 'those damages which naturally and necessarily flow or result from the injuries alleged. . . .'" *Hardwick Properties, Inc. v. Newbern*, 711 So. 2d 35, 39 (Fla. 1st DCA 1998) (quoting *Hutchison v. Tompkins,* 259 So. 2d 129, 132 (Fla. 1972)). General damages "'may fairly and reasonably be considered as arising in the usual course of events from the breach of contract itself.'" *Id.* (quoting *Fla. E. Coast Ry. v. Beaver St. Fisheries, Inc.,* 537 So. 2d 1065, 1068 (Fla. 1st DCA 1989)). Stated differently, "[g]eneral damages are commonly defined as those damages which are the *direct*, natural, logical and *necessary* consequences of the injury." *Fla. Power Corp. v. Zenith Indus. Co.*, 377 So. 2d 203, 205 (Fla. 2d DCA 1979) (emphasis added).

"In contrast, special damages are not likely to occur in the usual course of events, but 'may reasonably be supposed to have been in contemplation of the parties at the time they made the contract.'" *Hardwick*, 711 So. 2d at 40 (quoting *Fla. E. Coast Ry.,* 537 So. 2d at 1068). They "consist of items of loss which are peculiar to the party against whom the breach was committed and would not be expected to occur regularly to others in similar

circumstances." *Id.* (citing *Johnson v. Monsanto Co.,* 303 N.W.2d 86 (N.D. 1981)). "In other words, 'general damages are awarded only if injury were foreseeable to a reasonable man and . . . special damages are awarded only if actual notice were given to the carrier of the possibility of injury. Damage is foreseeable by the carrier if it is the proximate and *usual consequence* of the carrier's action.'" *Fla. E. Coast Ry.*, 537 So. 2d at 1068 (quoting *Hector Martinez & Co. v. S. Pac. Transp. Co.,* 606 F.2d 106, 109 (5th Cir. 1979)).

"[C]onsequential damages '*do not arise within the scope of the immediate buyer-seller transaction*, but rather stem from losses incurred by the non-breaching party in its dealings, *often with third parties*, which were a proximate result of the breach, and which were *reasonably foreseeable* by the breaching party at the time of contracting.'" *Hardwick*, 711 So. 2d at 40 (emphasis added) (quoting *Petroleo Brasileiro, S.A., Petrobras v. Ameropan Oil Corp.,* 372 F. Supp. 503, 508 (E.D.N.Y. 1974)). "The consequential nature of loss . . . is *not based on the damages being unforeseeable* by the parties. What makes a loss consequential is that it stems from relationships with third parties, while still reasonably foreseeable at the time of contracting." *Bartram, LLC v. Landmark Am. Ins. Co.*, 864 F. Supp. 2d 1229, 1240 (N.D. Fla. 2012) (emphasis added) (citing *Hardwick Properties, Inc. v. Newbern*, 711 So. 2d at 40).

We agree with the Airpark that the damages in this case were not special damages. The contract required Passero to inspect, observe and monitor the construction work, including determining the suitability of materials used by the contractor, and to report any problems. It cannot be said that repairs stemming from improperly inspected and monitored construction work are unlikely to occur in the usual course of business. The damages in this case were not particular to the Airpark and did not involve special circumstances for which the Airpark would have been required to give Passero actual notice. Instead, these types of damages would be expected to occur to other parties in similar circumstances. Thus, they were not special damages.

However, the cost of repair here did not constitute general damages, either, because the damages were not the direct or

5

necessary consequence of Passero's alleged failure to properly inspect, observe, monitor, and report problems with the construction work. The contractor could have completed the job correctly without Passero performing its duties under the contract. Thus, the need for repair did not arise within the scope of the immediate transaction between Passero and the Airpark. Instead, the need for repair stemmed from loss incurred by the Airpark in its dealings with a third party – the contractor. While these damages "were reasonably foreseeable," they are consequential and not general or direct damages.

The parties agree there is no case law directly on point involving damages stemming from the failure to inspect and monitor construction work; however, we find this case is analogous to others that have found the cost to repair or replace property damaged following deficient inspections or other services constituted consequential damages. *See Urling v. Helms Exterminators, Inc.,* 468 So. 2d 451, 454 (Fla. 1st DCA 1985) (finding the cost to repair extensive termite damage to a home purchased after a termite inspection company erroneously certified that the home was free of damage constituted consequential damages, whereas the cost of the termite inspection constituted actual damages); *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984) (finding where a home was burglarized following the installation of a deficient security system, the actual damages constituted the cost of the defective system, not the value of the items stolen during the burglary). *See also Mosteller Mansion, LLC v. Mactec Eng'g & Consulting of Georgia, Inc.*, 661 S.E.2d 788, n.2 (N.C. Ct. App. 2008) (finding a builder's claim for damages to repair and recondition soil after an engineering firm erroneously conducted soil testing were consequential and indirect damages because they "do not flow directly and immediately from any action of" the engineering firm); *Fed. Reserve Bank of Richmond v. Wright*, 392 F. Supp. 1126, 1131 (E.D. Va. 1975) (finding a property owner's cost to correct structural defects that resulted from defective plans prepared by an architect constituted indirect damages); *McCloskey & Co., Inc. v. Wright*, 363 F. Supp. 223, 226 n. 1, 230 (E.D. Va. 1973) (finding the cost to repair a leaking roof caused by an architect's defective plans constituted consequential or incidental damages); *Richmond Redevelopment & Hous. Auth. v.*

*Laburnum Const. Corp.*, 80 S.E.2d 574, 579-80 (1954), *superseded by statute on other grounds* (finding damages caused by the explosion of a faulty gas line were consequential).

We acknowledge the case at hand is distinguishable because here, the contract between the Airpark and Passero expressly required Passero to inspect, observe, and monitor the construction work and to determine the suitability of the materials used by the contractor. Thus, we certify the following question as one of great public importance:

> WHERE A CONTRACT EXPRESSLY REQUIRES A PARTY TO INSPECT, MONITOR, AND OBSERVE CONSTRUCTION WORK AND TO DETERMINE THE SUITABILITY OF MATERIALS USED IN THE CONSTRUCTION, BUT THE PARTY FAILS TO DO SO AND INFERIOR MATERIALS ARE USED, ARE THE COSTS TO REPAIR DAMAGE CAUSED BY THE USE OF THE IMPROPER MATERIALS GENERAL, SPECIAL, OR CONSEQUENTIAL DAMAGES?

Finally, we reject the Airpark's argument that all limitations on liability for special or consequential damages in contracts involving professional service corporations such as Passero should be declared void pursuant to public policy. There is no public policy that would prohibit sophisticated parties such as Passero and the Airpark, which is a governmental entity, from negotiating a contract that limits liability for consequential damages. Thus, we AFFIRM but CERTIFY a question of great public importance.

LEWIS, J., concurs; ROWE, J., concurs in part and dissents in part with opinion.

———————————————

ROWE, J., concurring in part, and dissenting in part.

I concur in affirmance of the partial final summary judgment appealed. However, I dissent from the decision to certify a question to the supreme court.

7

_____

James J. Taylor Jr. and Katelyn J. Taylor of Taylor Law Firm, P.A., Keystone Heights, for Appellant.

Curtis L. Brown and Mark T. Snelson of Wright, Fulford, Moorhead & Brown, P.A., Altamonte Springs, for Passero Associates, LLC, Appellee.

John E. Oramas of Oramas & Associates, P.A., Miami, Amici Curiae in support of Appellee, Passero Associates, LLC.