556 So.2d 1097 (1990)
SAMARA DEVELOPMENT CORP., Etc., Petitioner,
v.
Richard MARLOW, Respondent.
No. 72763.
Supreme Court of Florida.
February 8, 1990.
*1098 Kathy Kaplan and Brian J. Sherr of Sherr, Tiballi, Fayne & Schneider, Fort Lauderdale, for petitioner.
Glenn M. Mednick of Gutkin, Miller, Shapiro & Selesner, Boca Raton, for respondent.
EHRLICH, Chief Justice.
We have for review Marlow v. Samara Development Corp., 528 So.2d 420, 422 (Fla. 4th DCA 1988), in which the Fourth District Court of Appeal certified the following question to be of great public importance:
IS A CONTRACT FOR THE SALE OF A CONDOMINIUM IN FLORIDA EXEMPT FROM THE PROVISIONS OF THE INTERSTATE LAND SALES FULL DISCLOSURE ACT, 15 U.S.C. § 1710, WHERE IT PROVIDES FOR COMPLETION WITHIN TWO YEARS BUT RESTRICTS THE BUYER'S REMEDIES FOR BREACH OF THE CONTRACT BY THE SELLERS TO A RETURN OF THE DEPOSIT OR SPECIFIC PERFORMANCE, OR MUST THE CONTRACT ALSO AFFORD THE BUYER THE ALTERNATIVE REMEDY OF A SUIT FOR DAMAGES?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We approve the decision below, and hold that in order for the sale of a condominium in Florida to be exempt from the provisions of the Interstate Land Sales Full Disclosure Act, the contract must unconditionally obligate the developer to complete construction within two years and must not limit the purchaser's remedies of specific performance or damages.
The relevant facts show that on November 23, 1983, Richard Marlow entered into a condominium purchase agreement with Samara Development Corporation (Samara) for the purchase of one of Samara's condominium units in Boca Raton, Florida. Marlow paid Samara a $10,940 deposit, and Samara promised to complete the condominium by June 1, 1984, less than two years from the date of the agreement. As part of the agreement, Marlow was entitled to recover the deposit or to bring an action for specific performance upon a default by Samara. Subsequently, Marlow sued Samara for breach of contract, seeking damages and a rescission of the contract pursuant to the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701-20 (1982) (effective August 1, 1968) ("the Act"). Samara responded by arguing that the interpretation of 15 U.S.C. § 1702(a)(2) by the United States Department of Housing and Urban Development (HUD) exempted it from the Act. The trial court granted a summary judgment in favor of Samara. On appeal, the Fourth District Court, relying on its previous decision in Berzon v. Oriole Homes Corp., 497 So.2d 670 (Fla. 4th DCA 1986), reversed and remanded the cause to the trial court with instructions that it deny Samara's motion for summary judgment and grant Marlow's motion for summary judgment, but certified the question to this Court as one of great public importance.
*1099 The relevant federal statute is 15 U.S.C. § 1702, which states in pertinent part:
(a) Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions of this chapter shall not apply to 
... .
(2) the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years.

(Emphasis added.)
Samara relies heavily on guidelines published by HUD, the federal agency responsible for administering laws concerning land sales,[1] as evidence that HUD interprets the Act as exempting developers if the contract obligates them to complete the project within two years and does not limit the purchaser's right to specific performance. Samara then correctly notes that the administrative interpretations of a statute by the agency required to enforce that statute are entitled to great weight. See, e.g., Department of Environmental Regulation v. Goldring, 477 So.2d 532 (Fla. 1985). However, we do not find that HUD clearly interprets the Act in the way urged by Samara.
The guidelines promulgated in 1979 by HUD's Office of Interstate Land Sales Registration, state that

any conditions which qualify the obligation to complete a building within two years nullify the applicability of the exemption. Likewise, any provision which restricts the purchaser's remedy of specific performance serves to nullify the construction obligation and disqualifies the transaction for the exemption.
Guidelines for Exemptions under the Interstate Land Sales Full Disclosure Act, 44 Fed.Reg. 24,010, 24,012 (1979) (emphasis added) [hereinafter "HUD 1979 Guidelines"]. Unlike Samara, we do not read this language to mean that limitation of the purchaser's remedy of specific performance is the only circumstance which would prevent a transaction from being exempt. The introductions to both the 1979 guidelines and those promulgated five years later in 1984 contain the following language:
Not every conceivable factor of the exemption process is covered in these Guidelines and variations may occur in unique situations. Examples are given, but the examples do not in any way exhaust the myriad possibilities occurring in land development and land sales activity, nor do they set absolute standards.

Guidelines for Exemptions under the Interstate Land Sales Full Disclosure Act, 49 Fed.Reg. 31375, 31376 (1984) (emphasis added) [hereinafter "HUD 1984 Guidelines"]; HUD 1979 Guidelines, supra, 44 Fed.Reg. at 24,010. Therefore, we view the discussion in the 1979 guidelines about limiting specific performance as one example, not exclusive, of a provision which would qualify the obligation to complete the construction within two years thereby preventing application of the exemption.
This interpretation is reinforced by the 1984 guidelines, which state:
Contracts that permit the seller to breach virtually at will are viewed as unenforceable because the construction obligation is not an obligation in reality. Thus, for example, a clause that provides for a refund of the buyer's deposit if the seller is unable to close for any reason within the seller's control is not acceptable for use under this exemption. Similarly, contracts that directly or indirectly waive the buyer's right to specific performance are treated as lacking a realistic obligation to construct.
HUD 1984 Guidelines, supra, 49 Fed.Reg. at 31378 (emphasis added). The position indicated by these guidelines is clearly that the obligation to complete construction within two years must not be illusory, and that limitation of the remedy of specific performance is one example of where the seller would be permitted "to breach virtually at will."
Further, the HUD guidelines clearly indicate that the agency will defer to state contract law to determine in each case *1100 whether the required obligation in fact exists. The 1984 guidelines emphasize that
HUD's interpretation of what constitutes a two-year obligation to construct a building relies on general principles of contract law in deciding whether or not the seller has, in fact, an obligation to erect a building within two years. Provisions for purchaser financing and remedies clauses are matters to be decided by the parties to the contract under the laws of the jurisdiction in which the construction project is located.

(emphasis added).[2] We must therefore look to Florida law to determine what is required of the contract in order to ensure that the "obligation" to complete construction is not illusory.
The construction of the Interstate Land Sales Full Disclosure Act has been addressed by several Florida district courts of appeal. Uniformly, they have held that in order for the developer to be "obligated" to complete the building within two years, the obligation must be unrestricted and the contract must not limit the purchaser's right to seek specific performance or damages. We agree.
In Dorchester Development, Inc. v. Burk, 439 So.2d 1032 (Fla. 3d DCA 1983), the Third District Court considered application of the Act where the contract obligated the seller to complete the building within two years but limited the purchaser's remedies to recission and refund of the deposit. The court reasoned that "[w]here the seller is obligated to complete by a time certain, the purchaser is not limited, as here, to the remedy of recission, but he may affirm the contract and seek damages." Id. at 1034. The court further stated that
[s]ince the Act is to be construed to effectuate its remedial purpose of protecting the land sale consumer, we can hardly conclude that a contract which has the effect of limiting the purchaser's remedies conforms to the requirements of the Act.
... .
Therefore, because the contracts in the present cause do not contain an unconditional commitment by Dorchester to complete the condominium units within two years, Dorchester is not exempt from the provision of the Act requiring that it furnish a property report to the purchasers in advance of the signing of the contract.
Id. at 1035 (citations omitted). See also Arvida Corp. v. Barnett, 502 So.2d 11 (Fla. 3d DCA 1986), review denied, 511 So.2d 297 (Fla. 1987); cf. Marco Bay Assocs. v. Vandewalle, 472 So.2d 472 (Fla. 2d DCA 1985), review denied, 482 So.2d 350 (Fla. 1986).
In Berzon v. Oriole Homes Corp., 497 So.2d 670 (Fla. 4th DCA 1986), the Fourth District Court, relying on Dorchester, held that a developer was not exempt from the provisions of the Interstate Land Sales Full Disclosure Act where the agreement specified that construction would be completed within two years but limited the damages available upon a breach of the agreement to a return of the deposit or specific performance. The Fourth District Court's opinion in the instant case is consistent with its prior decision in Berzon.
We note that the Interstate Land Sales Full Disclosure Act was intended to protect the public, and as such should be liberally construed in favor of the public. See Goldring. Further, it is a well-recognized rule of statutory construction that exceptions or provisos should be narrowly and strictly construed. See Farrey v. Bettendorf, *1101 96 So.2d 889 (Fla. 1957); Coe v. Broward County, 327 So.2d 69 (Fla. 4th DCA), aff'd, 341 So.2d 762 (Fla. 1976). We believe that without the availability of at least both specific performance and damages the obligation to complete the construction within two years is illusory. Specific performance alone is not sufficient because the developer could sell the property to a third party in the interim, thereby nullifying the availability of specific performance.[3]Halsell v. Renfrow, 202 U.S. 287, 26 S.Ct. 610, 50 L.Ed. 1032 (1906); Krantz v. Donner, 285 So.2d 699 (Fla. 4th DCA 1973). See generally 48 Fla.Jur.2d Specific Performance § 86 (1984); 71 Am.Jur.2d Specific Performance § 126 (1973). Cf. Con-Dev of Vero Beach, Inc. v. Casano, 272 So.2d 203, 206 (Fla. 4th DCA 1973) ("Specific performance of a contract for the sale of realty will not be decreed against the vendor who is unable to comply with the terms of his agreement."). The position urged by Samara would essentially open the door for the kind of fraud the Act was intended to prevent.
Therefore, we hold that Samara Development Corp. is not exempted from the provisions of the Interstate Land Sales Full Disclosure Act. We answer the certified question in the negative and approve the decision below.
It is so ordered.
SHAW, BARKETT and KOGAN, JJ., concur.
OVERTON, J., dissents with an opinion, in which GRIMES, J., concurs.
McDONALD, J., dissents.
OVERTON, Justice, dissenting.
I dissent.
Although I would agree that the majority decision reaches a just result, I find that we have no authority to construe this federal statute contrary to the construction by the federal agency charged by Congress with both its implementation and interpretation.
The question in this case requires an interpretation of 15 U.S.C. § 1702, the federal statute on which the instant claim is based. It provides:
(a) Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions of this chapter shall not apply to 
... .
(2) the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years.

(Emphasis added.) In Dorchester Development, Inc. v. Burk, 439 So.2d 1032 (Fla. 3d DCA 1983), the Third District Court of Appeal construed this provision to mean that a purchaser must be entitled to seek damages in addition to a return of the deposit or specific performance for the above-specified exemption to apply. The Fourth District Court of Appeal followed that construction in Berzon v. Oriole Homes Corp., 497 So.2d 670 (Fla. 4th DCA 1986), and in its decision in this case.
In this case, the district court recognized that its construction and interpretation of the relevant federal statute conflicted with HUD's interpretation of the act. Congress, pursuant to 15 U.S.C. § 1715, has specifically delegated to HUD the responsibility of administering its laws concerning interstate land sales. Acting under this authority, HUD's Office of Interstate Land Sales Registration (OILSR) drafted its 1979 guidelines, which included the following statement: "[A]ny provision which restricts the purchaser's remedy of specific performance serves to nullify the construction obligation and disqualifies the transaction for the exemption." Guidelines for Exemptions under the Interstate Land Sales Full Disclosure Act, 44 Fed.Reg. *1102 24,010, 24,012 (1979). In its guidelines five years later, OILSR addressed the Third District's decision in Dorchester and construed Dorchester consistently with its own position, noting that "[a]lthough the [Dorchester] language was broad, it is HUD's position that the court's concern regarding limitations on remedies was confined to the right to specific performance." Guidelines for Exemptions Available under the Interstate Land Sales Full Disclosure Act, 49 Fed.Reg. 31,375, 31,378 (1984). Consistent with its regulations, OILSR has issued numerous advisory opinions[*] which state that exemptions will be granted when the seller is obligated to complete the building within two years and the purchaser is not restricted from seeking specific performance. See, e.g., HUD Advisory Op., The Metro, No. 1-00793-42-11 (June 25, 1982); HUD Advisory Op., Casa Marina Condominiums, No. 1-00822-09-68 (June 2, 1982); HUD Advisory Op., The Porticos Condominium, No. 1-00795-09-63 (May 6, 1982); HUD Advisory Op., The Palace Condominium, No. 1-00801-09-64 (Apr. 23, 1982); HUD Advisory Op., The Newport at Port Royale, No. 1-00756-09-58 (Mar. 15, 1982). HUD has effectively said that a developer is exempt from the act if it binds itself to finish the project within two years and allows the purchaser to seek specific performance or a return of the deposit.
The law is clear that the interpretation of a federal statute by the federal agency authorized to do so must be given great deference. In Environmental Protection Agency v. National Crushed Stone Association, 449 U.S. 64, 83, 101 S.Ct. 295, 307, 66 L.Ed.2d 268 (1980), the United States Supreme Court stated: "It is by now a commonplace that `when faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration.' Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)." (Footnote omitted.) Further, in American Paper Institute, Inc. v. American Electric Power Service Corp., 461 U.S. 402, 422-23, 103 S.Ct. 1921, 1932-33, 76 L.Ed.2d 22 (1983), the United States Supreme Court stated that an agency's interpretation does not have to be the only reasonable one and it is not important that the result differs from the result which the court would have reached had it been initially presented with the question.
This Court has addressed how Florida courts should treat an interpretation of a statute by an authorized state agency. In Daniel v. Florida State Turnpike Authority, 213 So.2d 585, 587 (1968), we stated: "[I]t is well settled that the construction given a statute by the administrative agency charged with its enforcement and interpretation is entitled to great weight, and the court generally will not depart therefrom except for the most cogent reasons and unless clearly erroneous." (Citation omitted.)
I find that we must defer to the authorized federal agency's interpretation of the federal statute unless it is shown to be clearly erroneous. I cannot conclude that HUD's interpretation is clearly erroneous. Consequently, I find that it is one which should remain undisturbed. If I were writing on a clean slate, I would have no problem reaching the conclusion of the majority.
I find that this Court has no authority to substitute its judgment for that of the federal agency charged with enforcing the provisions of this federal act. Accordingly, I would quash the Fourth District's decision and disapprove Dorchester and Berzon.
GRIMES, J., concurs.
NOTES
[1] 15 U.S.C. § 1715 (1982).
[2] Samara also relies on several HUD advisory opinions as evidence of that agency's interpretation of the Act. The 1984 guidelines state that "[b]ecause of the variations in applicable contract law among the states and the many different provisions that are used by sellers in construction contracts, HUD may condition its advisory opinions under this exemption on representations by local counsel as to the current status of state law on the relevant issues." Guidelines for Exemptions under the Interstate Land Sales Full Disclosure Act, 49 Fed.Reg. 31375, 31378 (1984). In drafting advisory opinions, therefore, HUD may have relied on counsel's representations of state law. We also note that most of the advisory opinions cited by Samara were issued within a six-month period in 1982, and that opinions were issued in 1981 and 1987 which take a contrary view. Therefore, the HUD advisory opinions do not present a consistent view of the Act, and are unpersuasive.
[3] See Blue Lake Apartments, Ltd. v. George Gowing, Inc., 464 So.2d 705 (Fla. 4th DCA 1985). Indeed, that is the situation here. On or around May 4, 1985, Samara entered into a purchase agreement for the sale of the same condominium unit at issue, for an amount greater than the contract price between respondent Marlow and Samara, and the property has since been conveyed.
[*] HUD is authorized to issue these opinions pursuant to 24 C.F.R. § 1710.17 (1988).