**Mario PILATO and Randi Pilato, Plaintiffs,**

v.

**The EDGE INVESTORS, L.P. Defendant.**

**Case No. 08–80796–CIV.**

United States District Court, S.D. Florida.

March 30, 2009.

Robin Ilene Cohen, Shapiro Blasi Wasserman & Gora PA, Andrew Bruce Blasi, Boca Raton, FL, for Plaintiffs.

Geoffrey Michael Cahen, Greenberg Traurig et al., Boca Raton, FL, for Defendant.

## *ORDER GRANTING IN PART, DENYING IN PART MOTION TO DISMISS [DE 7] and DENYING AS MOOT [DE 13]*

DONALD M. MIDDLEBROOKS, District Judge.

THIS CAUSE comes before the Court on Defendant, The Edge investors, L.P.'s ("Defendant") motion to dismiss [DE 7]. I have reviewed the record and am fully advised in the premises.

**Background**

On July 18, 2005, Plaintiffs entered into a purchase agreement (the "Contract") with Defendant for the purchase of a pre-construction condominium unit, and placed money into an escrow account. On July 16, 2008, Mario Pilato and Randi Pilato ("Plaintiffs") filed suit against Defendant, alleging two counts: (1) violation of the Interstate Land Sales Full Disclosure Act ("ILSA"), 15 U.S.C. § 1703(d)(1), 1703(d)(2), and 1703(d)(3), et seq.; and (2) violation of Florida's Condominium Act, Fla. Stat. 718.503(1)(a). Plaintiffs seek damages against Defendant, including a return of their deposit, rescission and cancellation of the Contract, and attorneys fees and costs. Defendant's moved to dismiss both counts.

## Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (citation omitted). Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1964–65 (citations omitted). For the purpose of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993).

## Analysis

### A. The ILSA Claim

In Count I, Plaintiffs claim Defendant failed to unconditionally commit to complete construction in two years (thus exempting it from certain ILSA requirement). First, they argue that because Paragraph 7 of the Contract provides an exception for a force majeure. Second, Plaintiffs further argue that Paragraph 24 of the Contract, which prevents Plaintiffs from recording a lis pendens against the Unit, "impermissibly limits Plaintiffs' ability to effectively pursue a specific performance claim, thus rendering Defendant's obligation to complete construction illusory such that it is not an unconditional commit-ment to complete construction" in further violation of ILSA. [DE 1, p. 3]. Third, Plaintiffs contend that the "insufficient sales quota clause" contained in Paragraph 7 of the Contract renders Defendant's completion obligation illusory." *Id.* Finally, Plaintiffs allege that the "savings clause" contained in Paragraph 36 of the Contract "is void and cannot cure Defendant's failure to conditionally commit to complete construction within two years." *Id.*

### 1. The Force Majeure Clause

 Plaintiffs allege they are entitled to rescind their Contract because Defendant failed to provide them with certain disclosures in violation of ILSA. Specifically, Plaintiffs contend that they were not provided with a property report; that there was no provision on the face of the Contract informing them of their rights to revoke; and there was no provision for notice of a default or reach by the Plaintiffs providing a twenty-day cure period in violation of ILSA. Defendant argues the it is exempt from the ILSA requirements because the contract promised to complete construction within two years. Plaintiffs argue that the force majeure clause in the Contract is not an unconditional commitment to complete construction, and therefore Defendant is not exempted.

ILSA requires the developer to provide various contractual provisions and documents for the purchaser:

(d) Additional authority for revocation of nonexempt contract or agreement at option of purchaser or lessee; time limit; applicability

Any contract or agreement which is for the sale or lease of a lot not exempt under section 1702 of this title and which does not provide—

(1) a description of the lot which makes such lot clearly identifiable and which is

in a form acceptable for recording by the appropriate public official responsible for maintaining land records in the jurisdiction in which the lot is located; (2) that, in the event of a default or breach of the contract or agreement by the purchaser or lessee, the seller or lessor (or successor thereof) will provide the purchaser or lessee with written notice of such default or breach and of the opportunity, which shall be given such purchaser or lessee, to remedy such default or breach within twenty days after the date of the receipt of such notice; and (3) that, if the purchaser or lessee loses rights and interest in the lot as a result of a default or breach of the contract or agreement which occurs after the purchaser or lessee has paid 15 per centum of the purchase price of the lot, excluding any interest owed under the contract or agreement, the seller or lessor (or successor thereof) shall refund to such purchaser or lessee any amount which remains after subtracting (A) 15 per centum of the purchase price of the lot, excluding any interest owed under the contract or agreement, or the amount of damages incurred by the seller or lessor (or successor thereof) as a result of such breach, whichever is greater, from (B) the amount paid by the purchaser or lessee with respect to the purchase price of the lot, excluding any interest paid under the contract or agreement,

may be revoked at the option of the purchaser or lessee for two years from the date of the signing of such contract or agreement. This subsection shall not apply to the sale of a lot for which, within one hundred and eighty days after the signing of the sales contract, the purchaser receives a warranty deed (or, where such deed is not commonly used in the jurisdiction where the lot is located, a deed or grant that warrants at least that the grantor has not conveyed the lot to another person and that the lot is free from encumbrances made by the grantor or any other person claiming by, through, or under him or her).

15 U.S.C. 1703(d) (emphasis added).

This section of the statute provides an exception under section 1702, which states:

Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions of this chapter shall not apply to—

(2) the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years;

15 U.S.C. 1702(a)(2).

Paragraph 7 of Contract between the parties provides, in part, that:

Seller agrees to substantially complete construction of the Unit, in the manner specified in this Agreement, by a date no later than two (2) years from the date Buyer signs this Agreement, subject, however, only to delays caused by matter which are legally recognized as defenses to contract actions in the jurisdiction where the Building is being erected (the "Outside Date").

ILSA is "an antifraud statute utilizing disclosure as its primary tool," enacted to "protect purchasers from unscrupulous sales of undeveloped home sites." *Winter v. Hollingsworth Properties,* 777 F.2d 1444, 1447 (11th Cir.1985). ILSA makes it unlawful for a developer or agent to make use of interstate commerce to sell or lease any lot unless a printed property report, meeting certain requirements, has been furnished to a purchaser before the signing of the contract. 15 U.S.C. § 1703(a)(1)(B). Where a developer fails to provide the property report prior to the

purchaser signing a contract, the contract may be revoked at the option of the purchaser within two years from the date of signing. § 1703(c). However, sales of "improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller [ ] to erect such a building thereon within a period of two years" are exempt from ILSA's coverage. § 1702(a)(2).

██ ILSA, a federal statute, is interpreted under federal law, and the Department of Housing and Urban Development's ("HUD") regulations are entitled to great deference. *Winter v. Hollingsworth Properties*, 777 F.2d 1444, 1448 (11th Cir. 1985). Whether a contract "obligates" a seller to erect a building within two years is a question of state contract law. *Samara Dev. Corp. v. Marlow*, 556 So.2d 1097, 1099–1100 (Fla.1990).

HUD has provided guidelines for exemptions available under ILSA. Guidelines for Exemptions under the Interstate Land Sales Full Disclosure Act, 61 Fed.Reg. 13596 (Mar. 27, 1996) [hereinafter ILSA Guidelines]. HUD's interpretation of what constitutes an obligation to construct relies on general principles of contract law. ILSA Guidelines, 61 Fed.Reg. 13596, 13599. HUD's guidelines also state that the "contract must not allow nonperformance by the seller at the seller's discretion," because such an obligation is "not an obligation in reality." ILSA Guidelines, 61 Fed.Reg. 13596, 13603. Further, HUD provides that

> [c]ontract provisions which allow for nonperformance or for delays of construction completion beyond the two-year period are acceptable if such provisions are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected. For example, provisions to allow time extensions for events or occurrences such as acts of God, casualty losses or material shortages are generally permissible.

*Id.*

The ILSA Guidelines further provide that

> Although the factual circumstances upon which nonperformance or a delay in performance is based may vary from transaction to transaction, as a general rule delay or nonperformance must be based on grounds cognizable in contract law such as impossibility or frustration and on events which are beyond the seller's reasonable control.

*Id.*

In addressing ILSA, the Supreme Court of Florida has stated that, "in order for the developer to be 'obligated' to complete the building within two years, the obligation must be unrestricted and the contract must not limit the purchaser's right to seek performance or damages." *Samara Dev. Corp.*, 556 So.2d at 1100.

District courts that have examined this issue of the force majeure clause and are divided. Compare *Harvey v. Lake Buena Vista Resort, LLC*, 568 F.Supp.2d 1354 (M.D.Fla.2008) (holding that developer did not qualify for ILSA exemption where contract's force majeure clause expanded defenses beyond those acceptable under Florida law) and *Stein v. Paradigm Mirsol, LLC*, 551 F.Supp.2d 1323 (M.D.Fla. 2008) (same), with *Kamel v. Kenco/The Oaks at Boca Raton, LP*, 2008 WL 2245831, 2008 U.S. Dist. LEXIS 42467 (S.D.Fla. May 29, 2008) (finding a contract's force majeure clause qualified developer for ILSA exemption because the application of the defense of impossibility of performance is a fact-specific inquiry and the contract, while listing factual circumstances that could give rise to the defense of impossibility of performance, only conditioned non-performance on impossi-

bility) and *Rondini v. Evernia Properties, LLLP,* No. 07–81077–CIV–HUR-LEY/HOPKINS, 2008 WL 793512 (S.D.Fla. Feb. 13, 2008) (finding that some conditions placed on defendant's obligation to build did not nullify the applicability of the ILSA exemption).

■ I find that a developer may place some conditions on an obligation to build and still qualify for the statutory exemption. Further, Plaintiffs rely upon *G.L. Homes of Lake Charleston Associates, Ltd. v. Arbid,* No. AP 95–3496 AY (Fla.Cir.Ct. Aug. 12, 1996). In Arbid, the court held that "labor and material shortages categorically do not give rise to the defense of impossibility or frustration of purpose." *Id.* at 4. The Honorable Kenneth A. Marra recently held that a force majeure clause similar to the one at issue in this case only conditioned completion upon impossibility of performance. *Kamel,* 2008 WL 2245831 at *4, 2008 U.S. Dist. Dist. LEXIS 42467 at *12. Judge Marra acknowledged that he was on the panel of judges that issued the ruling in *Arbid* but determined that the *Arbid* court's reasoning was erroneous and declined to follow its holding. *Id.* This Court agrees with the *Kamel* decision.

The clause at issue lists specific events that Defendant may attempt to raise in a breach of contract action to constitute the affirmative defense of impossibility of performance, or another permissible affirmative defense. That is the only condition Defendant placed on its obligation to complete construction. The clause contemplates only legally-recognized defenses in Florida and, in this case, does not expand the definition of the defense such that it made Defendant's obligation to finish illusory. Therefore, I find that the conditions placed on the agreement does not nullify the applicability of the § 1702(a)(2) exemption. Accordingly, the agreement is exempt from the requirements of ILSA.

## 2. Temporary Certificate of Occupancy

■ Additionally, Plaintiffs claim that the Contract violates ILSA because the Contract measures completion by the date that Defendant obtains a temporary certificate of occupancy ("TCO"). With regard to the TCO complaint, the provisions in the Contract are consistent with Hud guidelines, which require a unit to be "ready for occupancy" in order "to be considered complete." *See* Supplemental Information to Part 1710: Guidelines for Exemptions Available Under the Interstate Land Sales Fully Disclosure Act, available at *http:// www.hud.gov/offices/hsg/sfh/ils/ilsexemp. cfm.* As such, Plaintiffs have failed to plead in any way that using an issuance of a temporary certificate of occupancy as a proxy for substantial completion is not an unconditional commitment to complete construction. Furthermore, even examining the contract outside the purview of the HUD guidelines, Plaintiffs' claim contradicts itself. Section 307.5 of the South Florida Building Code makes no distinction between temporary and permanent certificates of occupancy, and in relevant part provides for a temporary certificate of occupancy:

(A) A Temporary and/or Partial Certificate of Occupancy may be issued by the Building Official for the temporary use of a portion of a building, providing the portion of the Building to be occupied is clearly designed and all code provisions . . . relating to public safety have been met and approved by the Building Official.

Section 307.5 of the South Florida Building Code.

A TCO, by definition, issued to properties that are substantially complete. Therefore, the promise is not illusory and this part of the claim fails because it defeats itself. As such, Plaintiffs have failed to

plead in any way how "the issuance of a temporary certificate of occupancy is not an unconditional commitment to complete construction." [DE 1, Paragraph 11].

### 3. The Insufficient Sales Quota Clause

█ Plaintiffs further allege that Paragraph 7 of the Contract render's Defendant's completion obligation illusory and therefore not unconditional. Paragraph 7 states in part: "[n]otwithstanding the foregoing or any other contrary provision of the Agreement, Seller shall have the right, in Seller's sole discretion, to cancel the Agreement and cause Buyer's deposits to be refunded in the event that Seller does not enter into binding contracts to sell at least eighty percent (80%) of the Units in the Condominium."

Defendant counters that such a provision is consistent with HUD guidelines, and states that with regard to contingency clauses, HUD has instructed:

> Also permissible, in the case of multiunit construction, is a clause conditioning the completion of construction or closing of title on a certain percentage of sales of other units. The presale period cannot exceed 180 days from the date the first purchaser signs a contract in the project or, in a phased project, from the date the first signs a sales contract in a phase. Such a clause may not extend the overall two-year obligation to construct.

49 FR 31375, 31378.

The terms of the contract comport with the HUD guidelines, and I find that this contingency does not interfere with the developer's two-year completion obligation.

### 4. The Lis Pendens Clause

█ Plaintiffs allege that because the contract does not allow for a lis pendens, it makes specific performance unavailable to them, thus making the promise of complete construction illusory. While a lis pedens certainly goes far to protect a plaintiff's interest in the property, and certainly warns potential purchasers that the property is encumbered, being awarded a lis pendens is not the same as specific performance. It does not give the Plaintiff actual possession and ownership of the property that specific performance would render. In fact, a lis pendens does not, in itself, prevent the property from being bought from a third party. See *Haisfield v. ACP Florida Holdings, Inc.*, 629 So.2d 963, 965 (Fla. 4th DCA 1993)("a lis pendens technically does not prevent the sale of the property, nor is it a lien on the property"). Finally, "even in the absence of a recorded lis pendens, if the third party purchaser takes title to property with awareness of a prior interest, evidenced ... by the pending litigation, such notice bars the third party's claim to the property." *Westburne Supply, Inc. v. Community Villas Partners, Ltd.*, 508 So.2d 431, 435 (Fla. 1st DCA 1987). Therefore, the availability of specific performance does not rise or fall on the availability of obtaining a lis pendens. Therefore, I cannot accept the argument that the promise is illusory merely because the Contract does not allow Plaintiffs to obtain a lis pendens.

### 5. The "Savings Clause"

█ Further, the Contract included a severability clause, which indicates the parties' intent that the ILSA exemption apply. Severability clauses are recognized and enforceable under Florida law. See *Fonte v. AT & T Wireless Servs., Inc.*, 903 So.2d 1019, 1024 (Fla. 4th DCA 2005). Here, the language contained in the "severability clause" portion of the Contract does not constitute an impermissible waiver, nor does it reveal an intent solely to evade ILSA's disclosure requirements. Under Florida law, a court should construe the provisions of a contract from the words of the entire contract. *Sugar Cane Grow-*

*ers Coop., Inc. v. Pinnock*, 735 So.2d 530, 535 (Fla. 4th DCA 1999). Courts should endeavor to reconcile apparent inconsistencies. *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So.2d 938, 941 (Fla.1979). Reading the Contract as a whole and giving all language effect, the Court finds that the Contract contains a two-year completion obligation that is not illusory and, accordingly, is eligible for the ILSA exemption.

**B. Violations of Florida's Condominium Act**

In Count II, Plaintiffs allege that within fifteen days of the receipt of Defendants' revisions of the offering document, Plaintiffs "delivered written notice of their intention to cancel the Contract based upon Defendant's material alteration or modification of the offering in a manner that is adverse to Plaintiffs." [DE 1, p. 9]. Specifically, Plaintiffs allege three modifications were material and adverse to them, in violation of Fla. Stat. 718.503(1)(a).

The first change was to paragraph 15: the Plaintiffs claim that Defendant added a provision which requires non-binding arbitration of disputes between members of the condominium association and the association, or among members. The provision also contains an attorneys fees shifting clause to the prevailing party. The second change was to paragraph 13.7: which Plaintiffs allege revoked Defendant's obligation to pay assessments on the units owed by the Edge, for a period of up to four years. The third change was to paragraph 17: after the first year, unit owners are no longer allowed to vote to continue to not provide or collect for reserves as it did before the revisions, making collection of reserves is now mandatory after the first year and it is no longer an option for the homeowners to keep the assessments free of reserves. Plaintiffs allege that this will result in an almost 300% increased cost per year to them.

Section 718.503(1)(a)1 permits a buyer to cancel a purchase agreement within 15 days of receiving from the developer "any amendment which materially alters or modifies the offering in a manner that is adverse to the buyer." Plaintiffs allege that based on the foregoing, they are entitled to cancel the contract.

At this stage in the proceedings Plaintiffs have stated a claim for a violation of 718,503; therefore, Count II stands. However, I direct the parties' attention to an Order to be issued in a related case, *Seldin, et. al. v. The Edge Investors, L.P.*, Case No.: 07–80575–CIV–MIDDLEBROOKS/JOHNSON, involving the same contract, the same defendant, and similar claims, but where the proceedings are at the summary judgment stage.

Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant's motion to dismiss [DE 7] is GRANTED IN PART AND DENIED IN PART. Count I is DISMISSED WITH PREJUDICE. Count II remains. It is further

ORDERED AND ADJUDGED that Plaintiffs' unopposed motion for leave to file excess pages [DE 13] is DENIED AS MOOT,