SILBERMAN, Judge.
 

 Jan Aikin appeals a final summary judgment entered against her in the lawsuit she filed seeking declaratory relief and rescission of the residential purchase con
 
 *693
 
 tract she entered into with WCI Communities, Inc. (WCI). In her complaint, Ms. Aikin sought rescission of the contract based on WCI’s alleged failure to comply with the reporting and registration requirements of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701-20 (2005) (the Act). The circuit court concluded that WCI was exempt from the registration and disclosure requirements of the Act because the contract contained a binding obligation for WCI to construct Ms. Aikin’s condominium unit within two years from the date she signed the contract. We affirm.
 

 BACKGROUND
 

 On September 30, 2005, Jim and Jan Aikin executed a contract with WCI in which they agreed to purchase a condominium unit from WCI in the Westshore Yacht Club Townhomes II.
 
 [1]
 
 The contract required WCI to complete construction within two years of the date of signing as follows:
 

 D. The Unit, as configured in Seller’s plans and specifications for the Unit and the Condominium, shall be completed not later than two (2) years from the date Purchaser signs this Contract. However, the date for completion may be extended by reason of delays incurred by circumstances beyond Seller’s control, such as acts of God, or any other grounds cognizable in Florida contract law as impossibility or frustration of performance, including, without limitation, delays occasioned by rain, wind and lightning storms. It is the intention of the parties that this sale qualify for the exemption provided by 15 U.S.C. Section 1702(a)(2), and nothing herein contained shall be construed or operate so as to any obligations of Seller or rights of Purchaser in a manner which would render said exception inapplicable.
 

 WCI completed construction of the unit within two years as required. On March 1, 2007, it notified Ms. Aikin that she could close on the unit. On March 12, 2007, Ms. Aikin sent notice to WCI through her attorney that she was revoking and terminating the contract because WCI had failed to comply with the reporting and registration requirements of the Act.
 
 [2]
 
 WCI disputed that Ms. Aikin was entitled to rescind the contract.
 

 THE CIRCUIT COURT LITIGATION
 

 On May 21, 2007, Ms. Aikin filed a declaratory judgment action. In count I, she sought a declaration as to whether the contract imposed “an unqualified and unconditional guarantee on WCI to complete the Unit within two years,” as required by 15 U.S.C. § 1702(a)(2). She asserted that the transaction was not exempt under 15 U.S.C. § 1702(a)(2) from the Act’s reporting and registration requirements because the contract did not unconditionally require WCI to complete construction of the unit within two years. In count II, Ms. Aikin sought to rescind the contract based on WCI’s failure to comply with the Act’s reporting and registration requirements. In connection with the rescission claims, Ms. Aikin asked for the return of her
 
 *694
 
 deposits plus interest, costs, and attorney’s fees.
 

 WCI filed a motion for summary judgment, stating that there were no disputed issues of material fact. WCI argued that it was exempt from the Act’s registration and disclosure requirements because the contract required it to unconditionally complete construction of the unit within two years. Ms. Aikin responded to WCI’s motion and filed a cross-motion for summary judgment. She agreed that there were no disputed issues of fact but maintained that the contract did not unconditionally require completion of the unit within two years. She asserted that the contract was not exempt from the Act’s registration and disclosure requirements for several reasons.
 

 First, she claimed that the
 
 force maj-eure
 
 language under section 3.D. of the contract, which permitted WCI to éxceed the two-year construction obligation under a number of circumstances, made the requirement that WCI complete the unit within two years conditional. Second, she argued that section 7.C. of the contract, which required her to give WCI twenty days’ notice of default and an opportunity to cure, provided WCI with the ability to extend the completion date beyond two years. Third, she contended that the two-year construction obligation was not unconditional because the contract placed limits on her remedies for breach of contract by WCI. Finally, she asserted that section 10 of the contract, which permitted WCI to unilatei'ally terminate the contract if it did not sell at least 65% of the units in the building within 180 days from the date the first purchaser signed a contract, effectively permitted WCI to breach the contract without consequence and limited her damages to a refund of her deposits plus interest.
 

 Following a hearing, the circuit court ruled that the contract unconditionally obligated WCI to build the condominium unit within two years. The court first concluded that it need not determine the impact of the
 
 force majeure
 
 clause because under the savings clause in section 3.D. of the contract, ‘WCI forewent the opportunity to be protected by that defense.” Second, the circuit court determined that the default and remedies provision under section 7.C. of the contract did not render the two-year construction obligation illusory. It reasoned that section 7.C. “must be read so as to entitle WCI to 20 days’ notice of default, provided that the receipt of that notice does not extend the time for construction beyond two years, and thereby render the exemption to [the Act] inapplicable.” The court did not specifically address Ms. Aikin’s arguments with respect to the limitations on remedies and section 10, which allowed WCI to terminate the contract if it did not meet certain pre-sale requirements.
 

 The circuit court summarized that “WCI was not required to comply with the registration and disclosure requirements of [the Act] because the Contract contained a binding obligation to construct the Unit within two years.” It granted final summary judgment in WCI’s favor and reserved jurisdiction as to WCI’s fees and costs. On appeal, Ms. Aikin raises the same arguments against the exemption.
 

 ANALYSIS
 

 1. The
 
 Force Majeure
 
 Language
 

 The Act “is an anti-fraud statute that uses disclosure as its primary tool to protect purchasers from unscrupulous sales of undeveloped home sites.”
 
 Maguire v. S. Homes of Palm Beach, LLC,
 
 591 F.Supp.2d 1263, 1267 (S.D.Fla.2008) (citing
 
 Winter v. Hollingsworth Props., Inc., 777
 
 F.2d 1444, 1447 (11th Cir.1985)).
 
 *695
 
 The Act is applicable to the sale of condominium units.
 
 See Stein v. Paradigm Mirasol, LLC,
 
 586 F.3d 849 (11th Cir.2009). Certain transactions are exempt from specified disclosure requirements. 15 U.S.C. § 1702. In pertinent part, for a condominium unit sale to be exempt from the disclosure requirements of the Act, “either it must be completed before it is sold, or it must be sold under a contract obligating the seller to erect the unit within two years from the date the purchaser signs the contract for sale.”
 
 Winter, 777
 
 F.2d at 1448.
 

 The interpretation of the Act is governed by federal law, but whether a given contract obligates the seller to complete construction within two years is a question of state contract law.
 
 Piloto v. Edge Investors, LP,
 
 609 F.Supp.2d 1301, 1307 (S.D.Fla.2009) (citing
 
 Samara Dev. Corp. v. Marlow,
 
 556 So.2d 1097, 1099-1100 (Fla.1990));
 
 see also Stein,
 
 586 F.3d 849, 854 (observing that statutory interpretation principles from federal decisions would be used to construe the term “obligating” but that Florida law “will inform us about the extent and nature of Paradigm’s legally enforceable obligation to fulfill its contractual promise to complete construction within two years”).
 

 The Secretary of Housing and Urban Development (HUD) is charged with the responsibility of administering the Act. 15 U.S.C. § 1715. HUD has promulgated guidelines for interpreting the statutory exemptions.
 
 See
 
 61 F.R. 13596-01 (Mar. 27, 1996), Supplemental Information to Part 1710: Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act (the Guidelines). “[T]he administrative interpretations of a statute by the agency required to enforce that statute are entitled to great weight.”
 
 Samara,
 
 556 So.2d at 1099;
 
 see also Winter, 777
 
 F.2d at 1448 (same). Accordingly, before addressing Florida contract law as to the issues before us, we review HUD’s Guidelines.
 

 The Guidelines acknowledge that “HUD’s interpretation of what constitutes an obligation to construct a building relies on general principles of contract law.” Guidelines, part IV(b). The Guidelines state in pertinent part as follows:
 

 The contract must not alloiv nonperformance by the seller at the seller’s discretion. Contracts that permit the seller to breach viHually at will are viewed as imenforceable because the construction obligation is not an obligation in reality.
 
 Thus, for example, a clause that provides for a refund of the buyer’s deposit if the seller is unable to close for reasons normally within the seller’s control is not acceptable for use under this exemption. Similarly, contracts that directly or indirectly waive the buyer’s right to specific performance are treated as lacking a realistic obligation to construct. HUD’s position is not that a right to specific performance of construction must be expressed in the contract, but that any such right that purchasers have must not be negated. For example, a contract that provides for a refund or a damage action as the buyer’s sole remedy would not be acceptable.
 

 Contract provisions which allow for nonperformance or for delays of construction completion beyond the two-year period are acceptable if such provisions are legally recognized as defenses to contract actions in the jurisdiction tvhere the building is being erected.
 
 For example, provisions to allow time extensions for events or occurrences such as acts of God, casualty losses or material shortages are generally permissible.
 
 Also permissible, in the case of multi-unit construction, is a clause con-
 
 
 *696
 

 ditiming the completion of construction or closing of title on a certain percentage of sales of other units.
 
 The presale period cannot exceed 180 days from the date the first purchaser signs a contract in the project or, in a phased project, from the date the first purchaser signs a sales contract in a phase. Such a clause may not extend the overall two-year obligation to construct.
 

 Although the factual circumstances upon which nonperformance or a delay in performance is based may vary from transaction to transaction,
 
 as a general rule delay or nonperformance must be based on grounds cognizable in contract law such as impossibility or frustration and on events which are beyond the seller’s reasonable control.
 

 Id.
 
 (emphasis added).
 

 The Guidelines also note that, because applicable contract law among the states varies, HUD may condition its advisory opinions regarding this exemption on local counsel’s representations regarding the current status of state law. The Guidelines explain that “the Florida Supreme Court has ruled that there must be an unconditional commitment to complete construction within two years and that the remedies available to the purchaser must not be limited.”
 
 Id.
 
 (citing
 
 Samara Dev. Corp. v. Marlow,
 
 556 So.2d 1097 (Fla.1990)). Ms. Aikin argues that
 
 Samara
 
 prohibits
 
 all
 
 conditions on the two-year construction obligation in order to qualify for the exemption.
 

 In
 
 Samara,
 
 the contract at issue required the seller to complete the condominium “less than two years from the date of the agreement.”
 
 Id.
 
 at 1098. However, the contract limited the buyer’s remedies upon the seller’s default to recovering the deposit or bringing an action for specific performance. The court held that an obligation to complete construction within two years is illusory unless both specific performance
 
 and
 
 damages are available remedies.
 
 Id.
 
 at 1101.
 

 The court observed that the Guidelines are entitled to great weight in interpreting the Act and explained that “[t]he position indicated by these [Guidelines is clearly that the obligation to complete construction within two years must not be illusory, and that limitation of the remedy of specific performance is one example of where the seller would be permitted ‘to breach virtually at will.’ ”
 
 Id.
 
 at 1099. The court also looked to Florida cases holding that the seller’s obligation to complete construction within two years must be unrestricted and that the buyer’s right to seek specific performance or damages must not be limited.
 
 Id.
 
 at 1100 (citing
 
 Dorchester Dev., Inc. v. Burk,
 
 439 So.2d 1032 (Fla. 3d DCA 1983), and
 
 Berzon v. Oriole Homes Corp.,
 
 497 So.2d 670 (Fla. 4th DCA 1986)).
 

 The court ultimately held as follows:
 

 [I]n order for the sale of a condominium in Florida to be exempt from the provisions of the Interstate Land Sales Full Disclosure Act, the contract must
 
 unconditionally obligate
 
 the developer to complete construction within two years and must not limit the purchaser’s remedies of specific performance or damages.
 

 Id.
 
 at 1098 (emphasis added).
 

 The Fourth District has not interpreted
 
 Samara
 
 ⅛ “unconditionally obligate” language as prohibiting
 
 all
 
 conditions on the two-year construction obligation.
 
 See Home Devco/Tivoli Isles, LLC v. Silver,
 
 34 Fla. L. Weekly D1932, D1933 (Fla. 4th DCA Sept. 23, 2009);
 
 Mailloux v. Briella Townhomes, LLC,
 
 3 So.3d 394, 396 (Fla. 4th DCA),
 
 review denied,
 
 14 So.3d 1004 (Fla.2009). In
 
 Mailloux,
 
 the Fourth District distinguished
 
 Samara
 
 on the basis that it concerned the limitation of remedies and not recognized defenses to nonper
 
 *697
 
 formance. 3 So.3d at 396. The court found that “acts of God, Impossibility of performance, and frustration of purpose are well-recognized defenses to nonperformance of a contract” and concluded that, under the Guidelines and Florida contract law, “well-recognized defenses to contractual nonperformance” do not render the two-year construction obligation illusory.
 
 Id.
 
 This contract language is analogous to the contract language at issue in this case.
 

 In
 
 Home Devco,
 
 the Fourth District concluded that contractual language that “includes virtually
 
 anything
 
 causing delay beyond the developer’s control” rendered the contract’s two-year construction obligation illusory. 34 Fla. L. Weekly at D1933-34. That language conditioned the construction obligation on “delays caused by
 
 acts of God, acts of governmental authority, flood, hurricane, strikes, labor conditions beyond Seller’s control, or any other similar causes not within Seller’s control.” Id.
 
 at D1933. Such contract language is significantly broader than the contract language at issue in this case.
 

 The Fifth District has also declined to interpret
 
 Samara’s
 
 “unconditionally obligate” language as prohibiting
 
 all
 
 conditions on the two-year construction obligation.
 
 See Plaza Court, LP v. Baker-Chaput,
 
 17 So.3d 720, 724 (Fla. 5th DCA 2009). However, the Fifth District has determined that any conditions on the obligation must be recognized within Florida’s doctrine of impossibility. The Fifth District applied such a limitation based on federal district court decisions in
 
 Jankus v. Edge Investors, LP,
 
 650 F.Supp.2d 1248 (S.D.Fla.2009), and
 
 Harvey v. Lake Buena Vista Resort, LLC,
 
 568 F.Supp.2d 1354 (M.D.Fla.2008).
 
 Plaza Court,
 
 17 So.3d at 726. The Fifth District’s reliance on
 
 Jan-kus
 
 and
 
 Harvey
 
 for this limitation has been called into question by a recent decision of the Eleventh Circuit in which it clarifies that conditions on a two-year construction obligation do not have to be recognized within the doctrine of impossibility.
 
 See Stein v. Paradigm Mirasol, LLC,
 
 586 F.3d 849, 857 (11th Cir.2009).
 

 In
 
 Stein,
 
 the Eleventh Circuit considered a contract that required that a condominium be built within two years provided “that Seller shall not be responsible for
 
 any delay caused by acts of God, weather conditions, restrictions imposed by any governmental agency, labor strikes, material shortages or other delays beyond the control of the Seller.” Id.
 
 The court held that the
 
 force majeure
 
 clause was limited in scope and did not render the two-year construction obligation illusory. The court noted that certain delays not within the seller’s control or subject to its whim do not impermissibly condition the two-year construction obligation, even if those delays do not meet the standard of impossibility of performance. The court further concluded that the
 
 force majeure
 
 clause was consistent with the anti-fraud purposes of the Act. The court did not discuss the Florida Supreme Court’s “unconditionally obligate” language in
 
 Samara.
 

 [3]
 

 Id.
 
 at 856 n. 4.
 

 Additionally, the majority of federal district court decisions interpreting
 
 Samara
 
 have not read its “unconditionally obligate” language to prohibit
 
 all
 
 conditions on the seller’s two-year construction obligation.
 
 Jankus,
 
 650 F.Supp.2d at 1254. While some of the federal district courts’ decisions holding that certain contractual conditions render the two-year construction
 
 *698
 
 obligation illusory have been overruled by the Eleventh Circuit’s decision in
 
 Stein,
 
 we find their treatment of Samara’s “unconditionally obligate” language instructive.
 

 In considering the Act, the Guidelines, and the foregoing cases, we conclude that the “unconditionally obligate” language in
 
 Samara
 
 is not intended to be read without considering the circumstances of that case. We agree with the
 
 Mailloux
 
 court’s conclusion that
 
 Samara
 
 is distinguishable. The issue that the Florida Supreme Court addressed in
 
 Samara
 
 was whether the contract improperly limited the buyer’s remedies for breach. The supreme court did not have before it the question of whether a
 
 force majeure
 
 clause like the one at issue here impermissibly conditioned the two-year construction obligation, thereby rendering the obligation illusory. For this reason, the court’s statement “that the contract must unconditionally obligate the developer to complete construction within two years” must be understood in the context of the facts and issues before the court.
 

 Moreover, to read
 
 Samara
 
 as prohibiting any contractual provision that would allow for a delay in construction beyond the two-year construction obligation would be inconsistent with the Guidelines and with legal defenses recognized under Florida law allowing for nonperformance or delays in performance. In
 
 Samara,
 
 the supreme court specifically acknowledged that the Guidelines are entitled to great weight. 556 So.2d at 1099. The Guidelines provide that “[c]ontract provisions which allow for nonperformance or for delays of construction completion beyond the two-year period are acceptable
 
 if such provisions are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected.”
 
 Guidelines, part IV(b) (emphasis added). This language supports our determination that a contract incorporating a legally-recognized defense under Florida contract law to the two-year construction obligation would not negate the exemption under 15 U.S.C. § 1702(a)(2). Florida law recognizes acts of God, impossibility of performance, and frustration of purpose as defenses to nonperformance of a contract.
 
 See Mailloux,
 
 3 So.3d at 396.
 

 The Guidelines further state that “[although the factual circumstances upon which nonperformance or a delay in performance is based may vary from transaction to transaction, as a general rule delay or nonperformance must be based on grounds cognizable in contract law such as impossibility or frustration
 
 and on events which are beyond the seller’s reasonable control.”
 
 Guidelines, part IV(b) (emphasis added). This provision does not limit the available defenses to impossibility or acts of God, but recognizes other events beyond the seller’s reasonable control as appropriate defenses that would not render the obligation to complete construction within two years illusory.
 

 Here, the contract provided that the completion period may be extended “by reason of delays incurred by circumstances beyond Seller’s control, such as acts of God, or any other grounds cognizable in Florida contract law as impossibility or frustration of performance, including, without limitation, delays occasioned by rain, wind and lightning storms.” The Guidelines specifically exempt everything in this provision with the exception of “delays occasioned by rain, wind and lightning storms.” We do not find that WCI’s listing of these potential occurrences which are beyond its control extends the clause’s scope beyond that permissible under the Guidelines.
 
 See Caswell v. Antilles Vero Beach, LLC,
 
 No. 08-80313-CIV, 2008 WL 4279555, at *3 (S.D.Fla. July 8,
 
 2008)
 
 (concluding that a clause listing specific events
 
 *699
 
 the builder may attempt to raise under impossibility of performance or another permissible affirmative defense “contemplates only legally-recognized defenses in Florida” and does not render the obligation to build illusory);
 
 Kamel v. Kenco/The Oaks at Boca Raton, LP,
 
 No. 07-80905-CIV, 2008 WL 2245831, at *4 (S.D.Fla. May 29, 2008) (same),
 
 aff'd,
 
 321 Fed.Appx. 807 (11th Cir.2008). Accordingly, the conditions placed on WCI’s two-year construction obligation do not render the obligation illusory.
 

 2. The Notice and Cure Provision
 

 We agree with the circuit court’s conclusion that the notice and cure provision under section 7.C. of the contract should be construed in a manner consistent with the two-year construction obligation set forth in section 3.D.
 
 See Kaplan v. Bayer,
 
 782 So.2d 417, 419 (Fla. 2d DCA 2001) (recognizing that when faced with an inconsistency between contractual provisions, a court should interpret the contract so as to reconcile the conflicting provisions). Thus, the circuit court properly read section 7.C. to require twenty days’ notice of default to WCI and an opportunity to cure so long as that notice would not extend the two-year construction obligation. When so interpreted, the provision does not render the two-year construction obligation illusory.
 

 3. The Provision Limiting Remedies
 

 We reject Ms. Aikin’s argument that the two-year construction obligation was not unconditional because the contract placed limits on her remedies for breach of contract by WCI. Section 7.C. provides that “nothing contained herein shall be deemed to restrict Purchaser’s remedies, if Purchaser shall be entitled to such remedies under applicable law, including the right to seek specific performance.” Accordingly, section 7.C. does not impermis-sibly restrict Ms. Aikin’s remedies or otherwise render the. two-year construction obligation illusory.
 

 4.The Pre-Sale Requirement
 

 Further, we conclude that the pre-sale requirement under section 10 of the subject contract does not render the two-year construction obligation illusory. As noted above, section 10 of the contract allowed WCI to terminate the contract if it did not sell at least 65% of the units in the building within 180 days from the date the first purchaser signed a contract. The Guidelines provide that such contingency clauses are permissible. Guidelines, part IV(b). Here, the pre-sale requirement complied with the Guidelines in that it did not extend the presale period beyond 180 days from the date the first purchaser signed and did not extend the overall two-year construction obligation. WCI did not have an unfettered right to cancel; it could only do so if it did not sell at least 65% of the units within the first 180 days after the first purchaser signed the contract. Accordingly, this provision does not render the two-year construction obligation illusory.
 
 See Piloto,
 
 609 F.Supp.2d at 1309.
 

 CONCLUSION
 

 For the foregoing reasons, we agree with the circuit court’s determination that the contract is exempt from the reporting and disclosure requirements of the Act. Accordingly, we affirm the final summary judgment entered in favor of WCI and against Ms. Aikin.
 

 Affirmed.
 

 ALTENBERND, J., Concurs.
 

 KELLY, J., Concurs in result only.
 

 [1]
 

 . Jim Aikin died on May 30, 2006, before Jan Aikin commenced tire lawsuit against WCI.
 

 [2]
 

 . The notice also informed WCI that Ms. Ai-kin was revoking and terminating the contract because WCI had failed to comply with the disclosure requirements of section 689.261, Florida Statutes (2005). While Ms. Aikin pursued this claim in count III of her declaratory judgment action, she later withdrew the claim with prejudice. Accordingly, we do not discuss the claim any further in this opinion.
 

 [3]
 

 . Instead, the Eleventh Circuit acknowledged that its interpretation of the Act differed from that of the Florida Supreme Court, noting that the Florida Supreme Court gave great weight to the Guidelines, which is "far more weight” than the Eleventh Circuit could give them. 586 F.3d 849, 857 n. 4.