518 So.2d 922 (1987)
DEVCO DEVELOPMENT CORPORATION, Appellant,
v.
HOOKER HOMES, INC., and Nona Barnes, Inc., D/B/a Hooker Barnes Homes, Appellees.
Nos. 86-3233, 87-640.
District Court of Appeal of Florida, Second District.
December 4, 1987.
Mark K. Straley and Frances Makemie Toole of Bush, Ross, Gardner, Warren & Rudy, Tampa, for appellant.
*923 James M. Shuler and Charles L. Weissing of Kass, Hodges & Massari, Tampa, for appellees.
PER CURIAM.
Devco Development Corporation, the developer of a residential subdivision under a contract with appellees, hereinafter referred to as "Hooker Barnes," to sell developed lots to Hooker Barnes appeals from a final judgment determining that Devco was not entitled to liquidated damages by reason of the failure of Hooker Barnes to close purchases of the lots developed by Devco. We affirm.
There is no question raised as to Devco's satisfactory performance of the development work called for by the contract. The only issues are, first, whether Devco timely performed under the terms of the contract so that Hooker Barnes was in default on its obligation to purchase lots from Devco and, second, even if there was such timely performance, whether Devco properly exercised its contractual right to the liquidated damages it claims. The trial court decided against Devco on both issues.
As to the first issue, we disagree with the trial court's conclusion that appellant Devco breached the contract for development and sale. Briefly stated, (a) excessive rain, by the terms of the contract, would constitute "any other condition" beyond Devco's control which would excuse a delay in performance; (b) in the absence of any showing of fraud or bad faith, the Heidt certificate, which stated in pertinent part that Devco was entitled to an additional fifty days because of delays caused by rainfall, should have been accepted as settling the dispute between the parties, as provided by the contract; and (c) the technical deficiency of the certificate (i.e., the failure to list the beginning and ending dates of delay periods) did not render the certificate fatally defective, especially in the absence of any pretrial objection by Hooker Barnes to the form of the certificate. Accordingly, the final judgment is reversed insofar as it finds that Devco breached the contract.
At the heart of the second issue are the following contractual provisions: Paragraph 3.a. of the contract between Devco and Hooker Barnes provides that Hooker Barnes "will deposit with [Devco] ... an irrevocable bank letter of credit in the amount of $200,000. The Letter of Credit shall provide for payment to [Devco] upon presentation of a sight draft... ." Paragraph 16 of that contract provides that "[i]n the event [Hooker Barnes] defaults with respect to its obligations under this Contract, the... Letter of Credit held by [Devco] on this Contract may be taken and kept by [Devco] as full liquidated damages." An addendum to that contract provides "that Stewart Title Company will hold the Letter of Credit in the amount of $200,000... . It is also agreed that the Letter of Credit will contain a provision that [Devco] sign a certification that [Hooker Barnes] is in default in order to make any claim against said Letter of Credit." The letter of credit, issued by Mellon Bank addressed to Devco provided that "We hereby issue our Irrevocable Letter of Credit ... in your favor for the account of [Hooker Barnes] ... in the amount of US $200,000 available by your drafts at sight drawn on Mellon Bank ... accompanied by the following: `Demand for payment and certification' per Exhibit `A' as attached." The exhibit A attached to the letter of credit is entitled "Demand for Payment and Certification" and contains the statement, to be signed by Devco, that "We are entitled pursuant to that certain contract ... between Devco and [Hooker Barnes] to draw the sum of $200,000 under the aforesaid irrevocable letter of credit. Default has occurred under the contract ... and [Hooker Barnes] has not cured said default."
The court's conclusions concerning these contractual provisions were that (a) Devco gave up its right to recover on the letter of credit by failing to take the requisite steps to collect on the letter before the letter's expiration on April 4, 1985, and (b) the letter was Devco's sole liquidated damages remedy. We agree with the trial court.
*924 As to (a), the contract and the letter of credit provided that Devco could be paid by Mellon upon presentation of two documents  a sight draft and a completed form of Demand for Payment and Certification. Devco provided neither of the required documents to Mellon.
Devco argues that it was not entitled to payment under the letter of credit without having possession of the letter itself and that Hooker Barnes, by protesting to Stewart Title Devco's request to Stewart that the letter be delivered to Devco, thus leading to an interpleader suit filed by Stewart Title, prevented Devco from getting the letter and thereby from getting payment of the $200,000 before the letter expired. However, nothing in either the contract or the letter required that Devco present the letter in order to obtain payment. Indeed, the affidavit of the international officer of the bank, which was admitted into evidence by stipulation, was that the letter would have been paid if Devco had presented the above-referenced sight draft and Demand for Payment and Certification.
An issuer of an irrevocable letter of credit owes a contractual obligation to the beneficiary of the letter of credit which is independent of, and unrelated to, the underlying contract between the beneficiary of the letter of credit and its purchaser. Braun v. Intercontinental Bank, 466 So.2d 1130 (Fla. 3d DCA 1985); Fidelity Nat'l Bank v. Dade County, 371 So.2d 545 (Fla. 3d DCA 1979). Absent fraud, once the beneficiary presents the requisite documents to the issuing bank, the bank must honor the letter of credit regardless of any dispute between the bank's customer and the beneficiary... . An issuing bank is only required to perform the ministerial task of "laying the instruments next to one another and determining whether they precisely coincide" with those mandated by the terms of the letter of credit.
See Management Service, Ltd. v. Club Sea, Inc., 512 So.2d 1025, 1026 (Fla. 3d DCA 1987).
Devco argues that the addendum requirement that the letter of credit be held by Stewart Title implicitly created the requirement that the original letter must be presented in order that Devco be entitled to payment by the bank. However, the contract and the letter did not contain such a requirement, nor can we create one. See AC Associates v. First National Bank of Florida, 453 So.2d 1121, 1129 (Fla. 2d DCA 1984). There was no evidence of an agreement, express or otherwise, between the parties that Stewart Title's retention of the letter of credit meant that before Devco made a claim on the letter of credit, Devco was required to have possession of the original letter of credit.
In its argument Devco asks the questions: "If Devco could have properly obtained payment pursuant to the letter of credit without obtaining the original from Stewart Title, why did Hooker Barnes insist upon the escrow? If possession of the original letter of credit was of no significance, why did Hooker Barnes file a protest with Stewart Title, thereby preventing Devco from obtaining the original letter of credit?" It may be true, as Devco argues, that Hooker Barnes' insistence upon the escrow agreement creates an assumption that Hooker Barnes believed that Devco needed the original letter before it could receive payment. That would be a reasonable assumption and a reasonable explanation for the escrow arrangement. However, this possible belief by Hooker Barnes is not the same as an agreement between the parties that Devco needed the original letter to obtain payment. For example, Devco could have known that, in the ordinary course of events, it could receive payment without possessing the letter, and therefore raised no objection to Hooker Barnes' request that the letter be held by Stewart Title because such a requirement would be, in effect, a nullity or superfluous.
Accordingly, we do not speculate on the possible assumptions to be drawn from the addendum provision that Stewart Title would hold the letter of credit. As we have said, there was no evidence of an agreement that this provision imposed an additional requirement on Devco's obtaining payment. The trial court found no such *925 agreement from the evidence presented, and our role is not to reweigh the evidence. See Tsavaris v. NCNB National Bank of Florida, 497 So.2d 1338 (Fla. 2d DCA 1986). "The role of the courts is not to make an otherwise valid contract more reasonable or less unreasonable from the standpoint of one contracting party." AC Associates, 453 So.2d at 1129.
Devco further argues that the addendum to the contract prevented the establishment of the letter of credit pursuant to the "unless otherwise agreed" language of section 675.5-106, Florida Statutes (1985), and thereby prevented payment on the letter. However, that language, which is taken from Article 5-106 of the U.C.C., merely means that after an irrevocable credit is established as to the beneficiary (in this case Devco), the credit cannot be modified or revoked without the beneficiary's consent. See Braun, 466 So.2d at 1132; Quinn, Uniform Commercial Code Commentary and Law Digest 5-19 (1978). Thus, even if there had been an agreement which prevented establishment of the letter, as Devco argues, that would not have prevented payment on the letter unless Hooker Barnes had instructed Mellon Bank that it was revoking or modifying the letter, and there is no evidence that this occurred.
As to the conclusion of the trial court referred to above as (b), the terms of the contract were that Devco had the right to obtain liquidated damages through the letter of credit. As we have said, Devco did not enforce that right. No other right to liquidated damages was provided for. Contrary to Devco's additional argument, the contract did not provide that the letter of credit was security for an amount of liquidated damages.
Affirmed in part, reversed in part.
DANAHY, C.J., RYDER, J., and BOARDMAN, EDWARD F., (Ret.) J., concur.