KELLY, Judge.
 

 Snavely Siesta Associates, LLC, an Ohio real estate developer, appeals a partial final judgment in favor of Richard C. Senker, as Trustee of the Richard C. Senker and Patricia A. Senker Land Trust. The judgment rescinds a condominium purchase agreement and orders Snavely to return Senker’s deposits based on the trial court’s determination that Snavely violated the Interstate Land Sales Full Disclosure Act (the Act), 15 U.S.C. § 1701-20 (2005), when it failed to provide Senker with a property report before the purchase contract was signed. We conclude that the contract obligates Snavely to complete construction of the condominium within two years and therefore it is exempt from the requirements of the Act.
 
 See
 
 15 U.S.C. § 1702(a)(2). Accordingly, we reverse the judgment in favor of Senker.
 

 Senker contracted with Snavely to purchase a condominium at Summer Cove, a condominium project on Siesta Key in Sarasota. The contract contained a presale contingency provision allowing Snavely to terminate the agreement if it was unable to obtain purchase contracts for at least sixty percent of the units in the condominium within 180 days from the date the first purchaser signed a purchase agreement. The contract specified that time was of the essence and that the condominium would be completed in two years. It also contained a force majeure provision stating that “the date for completion may be extended by reason of delays incurred by the circumstances beyond the Seller’s control, such as acts of God, or any other grounds cognizable in Florida contract law as impossibility or frustration of performance, including without limitation, delays occasioned by rain, wind and lightning storms.”
 

 Snavely built the condominium and, a little less than two years after entering into the contract with Senker, scheduled the closing and notified Senker of the closing date. In response, Senker notified Snavely that he was revoking the contract pursuant to section 718.503, Florida Statutes (2007), and he demanded a refund of his deposits. When Snavely declined, Senker sued. Ten months later, Senker amended his complaint to include a count for rescission pursuant to 15 U.S.C. § 1703(c) based on Snavely’s failure to provide a property report as required by 15 U.S.C. § 1703(a). Snavely claimed that it was exempt from the Act pursuant to 15 U.S.C. § 1702(a)(2), which in pertinent part provides that the Act shall not apply to “the sale or lease of any improved land
 
 *816
 
 on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years.” Senker moved for summary judgment on his claim for rescission arguing that Snavely was not exempt because its contractual obligation to complete construction within two years was rendered “illusory” by the force majeure provision and the presale contingency provision. The trial court agreed and granted Senker’s motion for summary judgment.
 

 Section 1703(a) of the Act makes it unlawful to sell or lease “any lot not exempt under section 1702” unless the seller complies with the provisions of the Act, including the requirement that the purchaser receive a printed property report prior to signing the purchase contract. If the seller has violated the Act, section 1703(c) gives the buyer the right to rescind the contract. At issue here is whether Snavely was exempt from the Act’s requirements because its contract obligated it to complete Senker’s condominium within two years. Because the Act is a federal statute, the meaning of the term “obligating” is a matter of federal law.
 
 Stein v. Paradigm Mirasol, LLC,
 
 586 F.3d 849 (11th Cir.2009),
 
 cert. denied,
 
 — U.S. —, 130 S.Ct. 1903, 176 L.Ed.2d 366 (2010). In
 
 Stein,
 
 the Eleventh Circuit considered the meaning of the term “obligating” and concluded that “the § 1702(a)(2) exemption applies when a contract imposes a legal duty on the developer to perform his promise to construct the condominium or other building within two years.”
 
 Id.
 
 at 854. Whether the contract imposes a legally enforceable obligation to complete construction within two years is a matter of Florida law.
 
 Id.
 
 Thus, we must examine the presale contingency provision and the force majeure clause to determine whether, under Florida law, they relieve Snavely of its legal obligation to complete Senker’s condominium within two years.
 

 We turn first to the presale contingency provision that allowed Snavely to terminate the purchase agreement if it did not obtain purchase contracts for at least sixty percent of the units in the condominium within 180 days from the date the first purchaser signed a purchase agreement. As is evident from its plain language, the objective of section 1702(a) is to ensure the timely completion of the building the purchaser is buying. In the case of a condominium unit, section 1702(a) presupposes that the building where the unit is located will actually be built. It is unreasonable to interpret section 1702(a) to require a seller to enter into a contract that would obligate it to go forward with construction of a particular unit even where it has not sold enough units to move forward with the entire project. Conditioning the sale of a unit on the seller’s ability to successfully sell enough units to make the entire project financially viable does not relieve the seller of its distinct obligation to timely complete an individual buyer’s unit once that contingency is met and the sale of the unit is consummated.
 

 Senker’s interpretation is also inconsistent with the regulations adopted by the Department of Housing and Urban Development (HUD). HUD regulations interpret section 1702(a)(2) of the Act as permitting inclusion of a “presale clause conditioning the sale of a unit on a certain percentage of sales of other units ... if [the presale clause] is legally binding on the parties and is for a period not to exceed 180 days.” 24 C.F.R. § 1710.5. Because HUD is the agency responsible for enforcement of the Act, its regulations are entitled to deference as an authoritative interpretation of the statute unless it appeal's from the statute or its legislative
 
 *817
 
 history that the agency’s interpretation is not one that Congress would have sanctioned. S
 
 ee Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,
 
 467 U.S. 887, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We see nothing in the language of the statute or its histoiy that convinces us that we should reject HUD’s interpretation.
 
 [1]
 

 We turn next to the force majeure provision. The purchase agreement signed by Senker includes language that “[t]he Unit ... shall be completed no later than two (2) years from the date the Purchaser signed this contract.” This language places Senker’s unit squarely within the two-year exemption of section 1702(a)(2). Even so, Senker maintains that the force majeure clause contained in the agreement removes the unit from the exemption. That clause states:
 

 However, the date for completion may be extended by reason of delays incurred by circumstances beyond the Seller’s control, such as acts of God, or any other grounds cognizable in Florida contract law as impossibility or frustration of performance, including, without limitation, delays occasioned by rain, wind and lightning storms.
 

 The Senkers argue this language renders the obligation to complete construction in two years illusory.
 

 In support of this position, the Senkers argue that while a developer may include language that excuses failure to perform based on impossibility of performance or frustration of purpose, the language in Snavely’s contract excuses nonperformance “based on circumstances nebulously described as ‘beyond the Seller’s control’ ” and that it permits Snavely to delay performance “for routine problems that include ‘without limitation, delays occasioned by rain, wind and lightning storms.’ ” This interpretation overlooks the fact that the phrase “circumstances beyond the Seller’s control” and the phrase “without limitation, delays occasioned by rain, wind and lightning storms” are tethered to the phrase “such as acts of God, or any other grounds cognizable in Florida contract law as impossibility or frustration of performance.” This language restricts permissible delays to grounds that would be cognizable in Florida contract law as impossibility of performance or frustration
 
 *818
 
 of purpose while at the same time providing a nonexhaustive list of possible examples. As Snavely acknowledges, the obligation to complete construction within two years is not rendered illusory by a provision that recognizes impossibility of performance or frustration of purpose as excuses for a failure to perform within that time.
 
 See, e.g., Stein,
 
 586 F.3d at 858 (recognizing that impossibility of performance excuses the obligation under the Act to complete construction within two years).
 

 Because neither the presale contingency provision nor the force majeure clause relieved Snavely of its obligation to complete construction within two years, it was exempt from the provisions of the Act. Accordingly, we reverse the judgment in favor of Senker and remand for further proceedings consistent with this opinion.
 

 Reversed and remanded.
 

 WHATLEY and MORRIS, JJ., Concur.
 

 [1]
 

 . As opposed to relying on HUD's regulations, we note that some cases have relied on HUD's interpretive guidelines when construing section 1702.
 
 See, e.g., Samara Dev. Corp.
 
 v.
 
 Marlow,
 
 556 So.2d 1097 (Fla.1990);
 
 Aikin v. WCI Cmtys., Inc.,
 
 26 So.3d 691 (Fla. 2d DCA 2010). Those cases state that the interpretive guidelines should be afforded great deference when trying to ascertain the meaning of a federal statute. In stating that proposition, however, both cases cite decisions dealing with federal regulations, not guidelines. This raises the question of whether in those cases the courts made an independent determination, as a matter of state law, to afford greater deference to guidelines than afforded by federal courts or whether the decision was the result of a failure to appreciate the distinction between a federal regulation and an interpretive guideline. As explained in
 
 Stein v. Paradigm Mirasol, LLC,
 
 586 F.3d 849, 858 n. 7 (11th Cir.2009), “[b]e-cause the HUD Guidelines are not published regulations subject to the rigors of the Administrative Procedure Act, including public notice and comment,' they do not deserve full
 
 Chevron
 
 deference. A guidelines position is entitled to only as much deference as it merits based on the 'thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.' "
 
 Id.
 
 (citations omitted) (referring to
 
 Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,
 
 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and quoting
 
 Reno v. Koray,
 
 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995), and
 
 Skidmore v. Swift & Co.,
 
 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)).