[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 8, 2010
JOHN LEY
CLERK

No. 09-14725

_____

D.C. Docket  Nos. 08-00790-CV-ORL-35-GJK,
08-01263-CV-ORL-35-GJK

CARLOS RODRIGUEZ,
MIGUEL RODRIGUEZ,
ISABEL ANGEL,

Plaintiffs-Counter-
Defendants-Appellees,

versus

BA EOLA, LLC,

Defendant-Counter-
Claimant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 8, 2010)

Before EDMONDSON, HILL and ALARCON,*  Circuit Judges.

_____
        * Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting
by designation.

HILL, Circuit Judge:

The issue in this appeal is whether or not a condominium purchase agreement between the buyers, Carlos Rodriguez, Miquel Rodriguez, and Isabel Angel (Buyers), and the seller, BA Eola, LLC (Developer), is exempt from the requirements of the Interstate Land Sales Full Disclosure Act (ILSFDA), 15 U.S.C. § 1701 *et seq*. The district court found that it was not. It granted summary judgment in favor of the Buyers, the return of their $40,850.00 deposit, plus interest, reasonable attorneys' fees, and costs.

Twenty-seven days after judgment issued in this case, and, fifteen days after notice of appeal was filed, a panel of this court decided *Stein v. Paradigm Mirasol, LLC*, 586 F.3d 849 (11th Cir. 2009), *cert. denied*, — U.S. —, 130 S.Ct. 1903, 176 L.Ed.2d 366 (2010). As the undisputed facts of this case are controlled by *Stein*, we reverse the judgment of the district court, and remand for further proceedings consistent with this opinion.

## I.

On May 1, 2007, the Buyers signed a contract with the Developer to buy a preconstruction condominium unit (Unit) at 101 Eola Condominiums in Orlando, Florida, for $408,500.00. The Buyers put down a 10% deposit, $40,850.00, on the Unit. Paragraph 5(a) of the contract specified that the Unit would be built within

two years.[1]  The contract also included Paragraph 20, a *force-majeure* provision, that allowed for delays in certain circumstances.[2]

The Unit was completed well within the two-year period.  A certificate of occupancy was issued, filed and recorded for the condominium development on March 12, 2008.  On February 11, 2008, the Developer notified the Buyers that the Unit was scheduled to be closed on March 18, 2008, at 1:00 p.m.  Buyers failed to appear at closing.

On April 4, 2008, Developer's counsel notified Buyers of their failure to attend the scheduled closing, and offered to reschedule.  On April 23, 2008,

---

[1] In pertinent part, paragraph 5(a) states: "Notwithstanding anything to the contrary herein, [the Developer] shall have the right from time to time by notice to [the Buyers] to extend the closing . . . , *provided however, in no event shall the Closing occur any later than that date which is two years from the date of this Agreement.*"  (emphasis added).

[2] A *force-majeure clause* is defined as "a contractual provision allocating the risk of loss if performance becomes impossible or impracticable, especially as a result of an event or effect that the parties could not have anticipated or controlled.  *Black's Law Dictionary*, 718 (9th ed. 2009).

Paragraph 20 of the Agreement reads in its entirety:

20.  Force majeure.  Either party hereto shall be excused for the period of any delay in the performance of any obligations hereunder when such delay is occasioned by cause or causes beyond the control of the party whose performance is so delayed and the time for performance shall be automatically extended for a like period.  *Such causes shall include, without limitation, all labor disputes, civil commotion, war, warlike operations, invasion, rebellion, hostilities, military or usurped power, sabotage, government regulations or controls, fire or other casualty, inability to obtain any necessary materials or services, or acts of God.*

(emphasis added).

Buyers sent a written demand letter to the Developer to rescind the contract and return their deposit, claiming Developer had failed to provide them with a property report required by the ILSFDA. *See* 15 U.S.C. § 1703(c). While acknowledging that it had not provided a property report to the Buyers, the Developer claimed that the Unit was exempt from ILSFDA requirements. *See* Section 1702(a)(2).[3] It refused to rescind the contract, declared the Buyers in default, and exercised its right to retain the deposit under the contract.

On May 1, 2008, Buyers filed a complaint in district court alleging that the Developer had violated the ILSFDA, Florida state law, and breached the contract. They sought to recover the deposit, other damages, attorneys' fees, prejudgement interest, and costs.

The material facts were undisputed. Both the Buyers and the Developer filed cross-motions for summary judgment. The district court, adopting the report and recommendation of the magistrate judge, granted summary judgment in favor of the Buyers, and against the Developer, for the $40,850.00 deposit amount, plus interest, reasonable attorneys' fees and costs. The district court held that

---

[3] Section 1702(a)(2) reads in pertinent part: "Exemptions. Sale . . . of lots generally. Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions of this chapter shall not apply to . . . the sale . . . of any improved land on which there is a residential . . . building, or the sale . . . of land under a contract obligating the seller . . . to erect such a building thereon within a period of two years."

paragraph 20 of the contract, the *force-majeure clause*, fatally undermined the

Developer's obligation to complete construction of the Unit within two years,

rendering the contract illusory.[4]  The Developer appeals.

## II.

The question is whether or not the district court erred in granting summary

judgment to the Buyers, and denying the Developer's cross-motion for summary

judgment, on the basis that the *force-majeure* clause rendered the two-year

commitment for closing illusory.  In so doing, the district court held that the

contract was not exempt under Section 1702(a)(2) of the ILSFDA.  Shortly after

---

[4] The district court stated:

> The only way to read [Paragraph 5(a) and Paragraph 20] in concert is to accept
> that Paragraph 5(a) set the date for closing at two years from contract, and
> Paragraph 20 permitted [the Developer] to exceed that obligation under the
> contract for the reasons provided under the paragraph.  In fact, by its plain
> meaning, it is difficult to discern a reason for delay that would not be excused
> under Paragraph 20.  Consequently, the Magistrate Judge was correct that the
> expanse of Paragraph 20 rendered the two-year commitment for closing illusory.
> *Compare Harvey v. Lake Buena Vista Resort, LLC*, 568 F. Supp.2d 1354, 1359
> (M.D. Fla. 2008), *aff'd*, 306 F. App'x 471 (11th Cir. 2009), (sic) (finding an
> obligation illusory when it conditioned performance on "any ground cognizable in
> contract law as impossibility or frustration of performance, including, without
> limitation, wind, rain, lightning and storm"), *with Kamel v. Kenco/The Oaks at
> Boca Raton LP*, 321 F. App'x 807, 810 (11th Cir. 2008) (finding the one-year and
> eleventh month commitment was not rendered illusory when it conditioned
> performance on "delays cause (sic) by Buyer or acts of God, the unavailability of
> materials, strikes, other labor problems, governmental orders, or other events
> which would support a defense based upon impossibility of performance for
> reasons beyond the Seller's control.").

*Kamel*, an unpublished case cited by the district court, is in accord with *Stein*.

5

judgment issued in this case, this court issued *Stein*. *Stein*, 586 F.3d at 849.

The facts of *Stein* are eerily similar to this appeal. As here, the condominium purchasers in *Stein* made a down payment with the developer. The contract specified that the condominium would be built within two years. *Id*. at 852. As here, the contract included a similarly-worded *force-majeure* provision that allowed for delays under certain circumstances. *Id*. As here, if the *Stein* developer breached the contract, the Steins could get back their deposit, with interest and any actual damages. *Id*. After the housing bubble in Florida burst, the Steins had second thoughts and wanted out of their contract. As here, they gave written notice to the developer that they were terminating their contract, as the developer had failed to provide them with a property report under the ILSFDA. *Id*. As here, the developer refused to return the Steins's deposit, contending that the contract between the parties fit the exemption set out in ILSFDA for "the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years." *Id. citing* 15 U.S.C. § 1702(a)(2).

As here, the *Stein* developer completed construction of the condominium within two years, as it had contracted to do so, and provided the Steins with a

notice of issuance of the Certificate of Occupancy. *Id.* at 852-53. As here, the

Steins filed suit in district court alleging violations of the ILSFDA and state law.

*Id*. at 852-53. As here, the parties filed cross-motions for summary judgment and

the district court granted summary judgment in favor of the buyers, allowing the

Steins to terminate the contract and requiring the developer to return the deposit.

*Id*. at 853. As here, the district court held that the *force-majeure* clause fatally

undermined the developer's obligation to complete construction within two years,

as the scope of that clause extended beyond events the law would recognize as

establishing impossibility of performance. *Id*. As here, the *Stein* district court

held that the developer could not claim the two-year completion exemption under

the ILSFDA because the contract rendered the developer's obligation to construct

the condominium "illusory." *Id.*

In a thoughtful, well-reasoned opinion, the *Stein* panel of this court reversed

and remanded the judgment of the district court, finding that "[e]ven though the

contract excuses delays beyond the [Developer's] control, it is still one

'obligating' [the Developer] to complete construction of the condominium within

two years for purposes of § 1702(a)(2) of the [ILSFDA]." *Id*. at 858.[5] The same is

---

[5] The *Stein* panel takes a dim view of claims brought under the ILSFDA, describing it as "a federal statute that has become an increasingly popular means of channeling buyer's remorse into a legal defense to a beach of contract claim." *Stein*, 586 F.3d at 852.

true here.[6]

III.

Our purpose is not to reinvent the wheel. We conclude that *Stein* is controlling precedent in this case. On that basis we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

[6] On page 20, note 6, of the Buyer's brief, an attempt is made to distinguish *Stein* on the basis that it was wrongly decided, that it "essentially eviscerate[s] ILSFDA and create[s] a huge loophole for any developer who wishes to dispense with ILSFDA's disclosure requirements." We find this argument to be without merit.